## TODD TAYLOR v. JILL TAYLOR
## (AC 30328)

Beach, Robinson and Peters, Js.

Argued October 13, 2009—officially released March 16, 2010

*Chris R. Nelson*, for the appellant (plaintiff).

*William H. Cashman*, for the appellee (defendant).

*Opinion*

ROBINSON, J. In this postjudgment marital dissolution action, the plaintiff, Todd Taylor, appeals from the

judgment of the trial court. On appeal, the plaintiff claims that the court improperly applied (1) General Statutes § 46b-56d by permitting the defendant, Jill Taylor, to relocate with their minor child to Sea Cliff, New York, and (2) General Statutes § 46b-62 by awarding the defendant attorney's fees to defend the plaintiff's appeal. We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. The parties were married on August 8, 1996. On January 15, 2003, the court rendered judgment dissolving the parties' marriage based on a separation agreement executed by the parties. The parties have one minor child who was born on April 4, 1999. The dissolution agreement provided that the parties share joint legal custody of their minor child. On April 28, 2004, the defendant filed a motion for modification of custody, modification of the parenting access plan and child support. On May 5, 2005, the court awarded the defendant sole custody of the parties' minor child. In this same order, the plaintiff was given visitation rights with the minor child on alternating weekends and Tuesday nights.

On April 14, 2008, the defendant filed a motion to relocate from Guilford,[1] Connecticut to Long Island, New York, with the parties' minor child. As an accompaniment to this motion, the defendant filed a motion to modify visitation in accordance with the court's ruling on her motion to relocate. On August 25, 2008, following a three day hearing regarding the motions, the court issued an oral decision granting the motion to relocate and modifying the visitation schedule. The only modification to the visitation schedule was the elimination of the plaintiff's overnight visit with the parties' minor child during the week because the distance would make

---

[1] At the time of the hearing, the defendant lived in Madison.

it impracticable. The court, however, allowed the plaintiff, upon twenty-four hours notice, to visit the parties' minor child in Sea Cliff on either Tuesday or Wednesday nights. The court ordered that its decision be effective immediately and not be stayed pending appeal. The plaintiff then filed this appeal in response to the relocation and modification of visitation order.

On September 26, 2008, the defendant filed a motion for counsel fees, requesting that the plaintiff pay the attorney's fees that she would incur as a result of defending this appeal. On October 14, 2008, the court granted the motion and ordered the plaintiff to pay $15,000, within thirty days. On November 3, 2008, the plaintiff amended this appeal to include the court's order requiring the plaintiff to pay the defendant's attorney's fees. The appeal stayed the order to pay attorney's fees, and on November 12, 2008, the defendant filed a motion for relief from stay. On December 16, 2008, the court granted the motion because the court found that the plaintiff was not credible "as to the extent of his poor finances." Additional facts will be set forth as necessary.

I

The plaintiff first claims that the court abused its discretion in determining that the defendant had met her burden of proof under § 46b-56d to relocate with the parties' minor child. Specifically, the plaintiff argues that the defendant did not seek relocation for a legitimate purpose but, rather, to obstruct the plaintiff's relationship with the parties' minor child. Further, the plaintiff contends that even if, arguendo, the defendant's motivation for seeking relocation was legitimate, Sea Cliff was not a reasonable place to move to satisfy her purpose for relocating. Finally, the plaintiff urges that, taking into account the factors set forth in § 46b-56d (b), the relocation was not in the best interest of the parties' minor child. We disagree.

"Our standard of review of a trial court's decision regarding custody, visitation and relocation orders is one of abuse of discretion." (Internal quotation marks omitted.) *Lederle* v. *Spivey*, 113 Conn. App. 177, 185, 965 A.2d 621, cert. denied, 291 Conn. 916, 970 A.2d 728 (2009). "It is within the province of the trial court to find facts and draw proper inferences from the evidence presented." (Internal quotation marks omitted.) *Payton* v. *Payton*, 103 Conn. App. 825, 829, 930 A.2d 802, cert. denied, 284 Conn. 934, 935 A.2d 151 (2007). Further, "[t]he trial court has the opportunity to view the parties first hand and is therefore in the best position to assess the circumstances surrounding a dissolution action, in which such personal factors as the demeanor and attitude of the parties are so significant." (Internal quotation marks omitted.) *Lederle* v. *Spivey*, supra, 186. Similarly, in a postjudgment relocation case following a dissolution of marriage action, the court is privy to the history of the case, the parties' respective situations and how the parties interact with one another. Therefore, "[w]hen reviewing a decision for an abuse of discretion, every reasonable presumption should be given in favor of its correctness." (Internal quotation marks omitted.) *Payton* v. *Payton*, supra, 829.

In 2006, the legislature enacted Public Acts 2006, No. 06-168, codified as § 46b-56d, which sets out the analysis a court is to apply when deciding a postjudgment motion to relocate with a couple's minor child.[2] Section

[2] General Statutes § 46b-56d provides: "(a) In any proceeding before the Superior Court arising after the entry of a judgment awarding custody of a minor child and involving the relocation of either parent with the child, where such relocation would have a significant impact on an existing parenting plan, the relocating parent shall bear the burden of proving, by a preponderance of the evidence, that (1) the relocation is for a legitimate purpose, (2) the proposed location is reasonable in light of such purpose, and (3) the relocation is in the best interests of the child.

"(b) In determining whether to approve the relocation of the child under subsection (a) of this section, the court shall consider, but such consideration shall not be limited to: (1) Each parent's reasons for seeking or opposing the relocation; (2) the quality of the relationships between the child and

46b-56d adopted the shift in the burden of proof to the relocating parent set forth in *Ireland* v. *Ireland*, 246 Conn. 413, 425, 717 A.2d 676 (1998), and expanded the best interest of the child standard adopted through case law[3] by providing specific factors that the court is to consider.

The first element that the defendant was required to prove was that the relocation was for a legitimate purpose. General Statutes § 46b-56d (a) (1). In support of his argument, the plaintiff asserts that (1) the defendant had other job offers in Connecticut and as a registered nurse would have been able to find employment, (2) the defendant did not believe Yale-New Haven Hospital actually terminated her employment for being pregnant or she would have filed a lawsuit, (3) the defendant had funds to pay for child care and (4) although her house was small, it was on the beach and a larger house in a less desirable location may have been more affordable. The plaintiff argues that the real reason that the defendant wanted to relocate was to reduce the amount of contact the parties' minor child has with the plaintiff.

The court found that the defendant was the sole custodian of a nine year old, an eighteen month old and a newborn child and that she was living in a very small home and having a hard time maintaining consistent employment at Yale-New Haven Hospital.[4] The defendant was also found not to have family support in her

each parent; (3) the impact of the relocation on the quantity and the quality of the child's future contact with the nonrelocating parent; (4) the degree to which the relocating parent's and the child's life may be enhanced economically, emotionally and educationally by the relocation; and (5) the feasibility of preserving the relationship between the nonrelocating parent and the child through suitable visitation arrangements."

[3] See *Ireland* v. *Ireland*, supra, 246 Conn. 419–20 (employing best interest of child standard, used in custody and visitation cases, to decide issue of relocation).

[4] Only the nine year old was an issue of the subject marriage.

current location and to have a "mind bogglingly difficult" schedule on any given morning. Due to her schedule and need both to care for all three children as well as to work full-time, the court found that the defendant's purpose for seeking relocation was legitimate. Further, the court referenced the history of the case and surmised that after seven years of litigation, it was clear that the parties were in constant conflict. Despite the obvious personal conflict between the parties, the defendant remained in the geographical area set out in the parties' dissolution agreement and did not try to evade such requirement. The court found that the defendant's willingness to remain near the plaintiff until this point signified to it that the reason stated in the defendant's motion to relocate and to modify visitation was legitimate.[5]

---

[5] The plaintiff also argues that the defendant's testimony evinces that the defendant's true motivation to relocate was to keep the parties' minor child away from the plaintiff. On cross-examination, the defendant testified:

"Q. You testified that you were not seeking to relocate to punish [the plaintiff], but you did testify that you're doing it to reduce [the minor child's] contact with his father. Is that correct?

"A. To reduce the—the negative—the conflict or the damage and the concerns—conflict that goes on. Yes.

"Q. So, your way of doing that would be to reduce the contact between [the minor child] and [the plaintiff]. Is that correct?

"A. To limit it. Yes."

The court did not find that this testimony was indicative of the defendant's true motive to relocate with the parties' minor child. Rather, this testimony supports the court's description of the type of environment to which the parties' minor child had been subjected. The court found that "the file makes clear that [the minor child] is already in counseling. He has now lived through four years of conflict. I don't think [the minor child] has a conscious memory that doesn't involve the conflict between his parents. That's all he has known."

Further, the court found that "[f]or seven years, despite what [the court] quoted Dr. [James] Connolly [a psychologist] as saying is a relentless pursuit of sole custody, [the defendant] has not left the area. She hasn't attempted to leave the area." Additionally, "[t]wo judges have found that [the defendant] has been willing to facilitate and encourage the contact and continuing parent-child relationship between [the plaintiff] and [the minor child], and the rich relationship they have speaks to that. That's not going to change." Therefore, we do not find that this testimony is proof that the court's

Second, the plaintiff asserts that the relocation was not reasonable in light of the purported purpose because the defendant had not yet secured employment or housing near Sea Cliff and, contrary to the court's finding that her other children lacked a support system, she asserted that she only lacked a support system for the parties' minor child. The court found that the defendant currently had scattered employment and needed to work full-time to support her three children. The court mentioned that it might be harder for the defendant to find someone to care for her infant than for the parties' minor child but that the effect on the parties' minor child was the same. Either way, it was disrupting the defendant's ability to parent and to work. Importantly, the court stressed that the issue of day care was not a financial problem, because even if day care costs were covered, day care does not look after children who are sick. The court emphasized the importance of a support system, consisting of the defendant's parents, other family and friends, that would give the defendant child care options should one of her three children get sick. These factors, the court found, would facilitate the defendant in finding and progressing in a full-time position.

Finally, the plaintiff argues that considering the factors set forth in § 46b-56d (b), the relocation was not in the best interest of the child. "We recognize the difficult issues that relocation cases present. The interests of the custodial parent who wishes to begin a new life in a new location are in conflict with those of the noncustodial parent who may have a strong desire to maintain regular contact with the child. At the heart of the dispute is the child, whose best interests must always be the court's paramount concern. Those interests do not necessarily coincide, however, with those

finding that the defendant's reason for wanting to relocate was legitimate, is clearly erroneous.

of one or both parents." *Ireland* v. *Ireland*, supra, 246 Conn. 419–20. This court has noted that employing the best interest of the child standard in a termination case "is a difficult task that requires the court to weigh many different and sometimes competing interests." *In re Davonta V.*, 98 Conn. App. 42, 48, 907 A.2d 126 (2006), aff'd, 285 Conn. 483, 940 A.2d 733 (2008). Similarly, the trial court was faced with the same challenge when deciding the issue of relocation. It candidly stated that both options, allowing or disallowing relocation, had negative aspects. For example, the court recognized that by allowing relocation, the plaintiff would not be able to coach the parties' minor child or attend his sporting events with the same frequency. Overall, however, the court found that although this relationship would not be the same, the parties' minor child would be able to maintain a relationship with the plaintiff while gaining a mother who "can work with some emotional support and be able . . . to care for her family." Because the defendant is the sole custodian of the parties' minor child, the court found that this result was in the best interest of the child.

In essence, the plaintiff presents a compilation of evidence that he believes weighs heavily in his favor and asks that this court reassess and reweigh all of the evidence presented at trial to find this evidence dispositive of the issue of relocation. "Once again, this court is compelled to state, what has become a tired refrain, we do not retry the facts or evaluate the credibility of witnesses." (Internal quotation marks omitted.) *Lederle* v. *Spivey*, supra, 113 Conn. App. 190. As recounted previously, there is sufficient evidence in the record to support the court's findings of fact and determination of the issue of relocation. We, therefore, cannot conclude that the court abused its discretion when granting the defendant's motion to relocate.

## II

The plaintiff next claims that the court abused its discretion in awarding the defendant attorney's fees to defend the plaintiff's appeal. Specifically, the plaintiff argues that the court improperly applied § 46b-62 because, although the statute allows the award of attorney's fees so that other financial orders are not undermined, the only other financial order was the recently lowered child support, and, therefore, the award was inappropriate. Also, the plaintiff argues that the defendant never made an evidentiary showing that she needed attorney's fees, which, the plaintiff contends, is a prerequisite to an award of attorney's fees. We disagree.

"General Statutes § 46b-62 vests in the trial court the discretion to award attorney's fees in custody proceedings. Our Supreme Court has included within the definition of attorney's fees allowable under § 46b-62 certain costs of litigation, including expert witness fees. . . . The criteria to be considered in determining whether an award of attorney's fees is appropriate include the age, health, station, occupation, amount and sources of income, vocational skills, employability [and] estate and needs of each of the parties. . . . We review the court's awarding of attorney's fees under the abuse of discretion standard. . . . The ultimate issue in our review, therefore, is whether the court reasonably could have concluded as it did." (Citation omitted; internal quotation marks omitted.) *Rozsa* v. *Rozsa*, 117 Conn. App. 1, 18, 977 A.2d 722 (2009).

In the present case, the court reasonably could have concluded as it did. There is evidence in the record that supports the court's finding that the plaintiff was not credible regarding his income. The plaintiff testified that there was a mistake on his financial affidavit concerning the amount he was paying for his automobile

lease and admitted that the financial affidavit he submitted to the court was made from his recollection, as opposed to from his records. The plaintiff also testified that his 2006 tax return, which reflected a weekly income of $7000, was just an anomaly due to a large commission attached to a particular business transaction. The court found that the plaintiff's informal method of calculating his financial affidavit, references to mistakes in the numbers and claim that his high prior weekly income was not indicative of his current income combined to undermine his credibility. The court did not abuse its discretion in finding that the plaintiff's lifestyle reflected a financial situation that allowed him to pay for the defendant's attorney's fees incurred in defending his appeal. Furthermore, the defendant submitted a financial affidavit showing weekly income and weekly expenses that she incurred as the sole custodian of the parties' minor child. The affidavit further showed that the defendant was unemployed at the time that it was filed. Last, the plaintiff testified that at the time of the hearing, his child support payments to the defendant were in arrears. The evidence presented at the hearing is sufficient to support the court's finding that the defendant was unable to afford the attorney's fees required to defend the plaintiff's appeal. Accordingly, we conclude that the court did not abuse its discretion when awarding the defendant attorney's fees.

The judgment is affirmed.

In this opinion the other judges concurred.