## JOHN L. REGAN *v.* SIOBHAN B. REGAN
## (AC 34536)

Gruendel, Alvord and Flynn, Js.

Argued March 4—officially released June 4, 2013

*Steven D. Ecker*, with whom, on the brief, were *M. Caitlin S. Anderson, Sarah S. Oldham*, and *Alexander J. Cuda*, for the appellant (defendant).

*John Regan*, pro se, the appellee (plaintiff).

*Opinion*

ALVORD, J. The defendant, Siobhan B. Regan,[1] appeals from the judgment of the trial court denying her postdissolution motion for permission to relocate the parties' minor son to Boston, Massachusetts. On appeal, the defendant claims that the court misapplied the governing law under General Statutes § 46b-56d, Connecticut's relocation statute,[2] by: (1) failing to determine whether it would be in the child's best interests to relocate to Massachusetts with the defendant or to remain in Connecticut under a different custodial arrangement; (2) basing its determination on two improper considerations; (3) requiring the defendant to prove the " 'economic necessity' " of the relocation; and (4) misconstruing the statute as it relates to the needs and interests of the nonrelocating plaintiff, John L. Regan. We affirm the judgment of the trial court.

---

[1] The defendant is now known as Siobhan B. Jones.

[2] In 2006, the legislature enacted Public Acts 2006, No. 06-168, codified as § 46b-56d, which sets forth the analysis a court is required to apply when deciding a postjudgment motion to relocate with a parent's minor child. *Taylor* v. *Taylor*, 119 Conn. App. 817, 821, 990 A.2d 882 (2010).

The following facts and procedural history are relevant to the defendant's appeal. The parties were married on January 20, 2001. They have one minor child, who was born on January 31, 2002. On December 15, 2004, the court rendered judgment dissolving the marriage and incorporated into that judgment an agreement executed by both parents. The dissolution agreement provided that the parents would share joint legal custody of their son with a joint parenting plan, but that the child's primary residence would be with the defendant. The plaintiff's rights of visitation, which have remained the same throughout the ensuing years, provided for "liberal parenting time" not less than every other weekend from 6 p.m. on Friday until 8 a.m. on Monday, and every Wednesday from 12:30 p.m. until 8 a.m. on Thursday.[3] Additionally, the agreement contained the following provision: "The [defendant] shall not relocate the minor child's residence more than 32.5 driving miles from Fairfield . . . without giving sixty days written notice to the [plaintiff] and receiving his consent or court order."[4]

On February 9, 2006,[5] the defendant filed a postjudgment motion for modification of the existing parenting plan seeking the court's permission to relocate with the parties' son to Boston, Massachusetts. She alleged that she had an employment opportunity in that area that would significantly increase her income. The matter was referred to the family relations office, which did

---

[3] The agreement further contained a vacation and holiday schedule.

[4] After the dissolution action was commenced but before judgment was rendered, the defendant had indicated that she wanted to relocate to Springfield, Massachusetts, with their minor son. In May, 2004, the court ordered a relocation, custody and access evaluation by the family relations office. The completed study recommended against the relocation. The defendant ultimately agreed to remain in Connecticut, and the parents executed the dissolution agreement containing the "32.5 driving miles" restriction.

[5] For reasons that are not relevant to this appeal, the defendant refiled that motion with the court on March 15, 2006.

not endorse the proposed relocation of the minor child. After a two day trial, the court, *Abery-Wetstone, J.*, issued a memorandum of decision in which it denied the defendant's postjudgment modification motion to relocate. The court concluded that the defendant had failed to prove that the relocation was for a legitimate purpose, that the defendant had failed to prove that her life would be enhanced economically by the move, that the proposed relocation would negatively impact the plaintiff's relationship with their son, and that the proposed relocation was not in the child's best interests.

In November, 2009, the defendant married John Powell. They now have two minor children together, and the defendant is a full-time homemaker. Powell is the sole source of financial support for their family unit, including the parties' minor son when he is living with the defendant. Powell is a bond salesperson in the securities market and has Boston based workplace obligations. On February 1, 2011, the defendant filed her second postjudgment motion for permission to modify the existing parenting plan to relocate to Boston with the parties' minor child. In that motion, she stated that Powell has been maintaining separate living quarters in the Boston area because of his employment and that his separation from the family unit, living in Stamford, placed emotional and financial strain on the family unit, including the parties' minor son. The court appointed an attorney for the minor child on March 17, 2011. Additionally, on March 31, 2011, the court granted the defendant's motion for the appointment of a private evaluator to conduct a relocation evaluation of the parties and their minor child.

A four day trial was held in February, 2012. Several witnesses, including two experts, testified at trial, and numerous exhibits were admitted for the court's consideration. Following the trial, the parties and the attorney

for the minor child filed briefs setting forth their respective positions. On March 8, 2012, the court issued its memorandum of decision. After commending the parties for their "excellent job of isolating their son from their legal disputes," the court recited the statutory criteria for a parent wishing to relocate a child's residence as set forth in § 46b-56d.[6] The court considered each statutory criterion and concluded: (1) the request for relocation was for a legitimate purpose; (2) the Boston area was a reasonable and legitimate location to achieve the defendant's purpose; and (3) the proposed relocation was not in the best interests of the minor child. Accordingly, the court denied the defendant's motion to relocate to Boston, Massachusetts with the parties' son. The defendant and the attorney for the minor child filed motions for reargument and reconsideration pursuant to Practice Book § 11-11, which the court summarily denied on April 3, 2012. This appeal followed.

As a general rule, "[o]ur standard of review of a trial court's decision regarding . . . relocation orders is one of abuse of discretion. . . . It is within the province of the trial court to find facts and draw proper

[6] General Statutes § 46b-56d provides: "(a) In any proceeding before the Superior Court arising after the entry of a judgment awarding custody of a minor child and involving the relocation of either parent with the child, where such relocation would have a significant impact on an existing parenting plan, the relocating parent shall bear the burden of proving, by a preponderance of the evidence, that (1) the relocation is for a legitimate purpose, (2) the proposed location is reasonable in light of such purpose, and (3) the relocation is in the best interests of the child.

"(b) In determining whether to approve the relocation of the child under subsection (a) of this section, the court shall consider, but such consideration shall not be limited to: (1) Each parent's reasons for seeking or opposing the relocation; (2) the quality of the relationships between the child and each parent; (3) the impact of the relocation on the quantity and the quality of the child's future contact with the nonrelocating parent; (4) the degree to which the relocating parent's and the child's life may be enhanced economically, emotionally and educationally by the relocation; and (5) the feasibility of preserving the relationship between the nonrelocating parent and the child through suitable visitation arrangements."

inferences from the evidence presented. . . . Further, [t]he trial court has the opportunity to view the parties first hand and is therefore in the best position to assess the circumstances surrounding a dissolution action, in which such personal factors as the demeanor and attitude of the parties are so significant." (Internal quotation marks omitted.) *Tow* v. *Tow*, 142 Conn. App. 45, 52, A.3d (2013). The defendant in the present case, however, does not challenge the factual findings directly but, rather, claims that she is challenging the court's conclusions based on its misapplication of the governing law under the relocation statute. Our review of such claims, therefore, is plenary, and we must determine whether the court's conclusions were legally and logically correct. See *Bretherton* v. *Bretherton*, 72 Conn. App. 528, 535–36, 805 A.2d 766 (2002).

I

The defendant's first claim is that the court failed to determine the critical question in this case in its analysis of whether the proposed relocation was in the best interests of the minor child. According to the defendant, once the court found that her request to relocate was for a legitimate purpose and that the proposed location was reasonable in light of that purpose, the court then was obligated to determine "whether it is in the minor child's best interests to relocate to Boston with [the defendant] or remain behind in Connecticut despite her relocation." The defendant argues that the court, after finding that she had satisfied the first two of the three prongs of § 46b-56d (a) by a preponderance of the evidence, had to assume that the defendant would "in fact" move to Boston and leave the parties' minor son behind under a different custodial arrangement. She claims that had the court made that assumption in its statutory analysis, it would have concluded that it was in the minor child's best interests to move to Boston with the defendant.

The resolution of the defendant's claim requires that we interpret the provisions of § 46b-56d. "Issues of statutory construction raise questions of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply." (Internal quotation marks omitted.) *Felician Sisters of St. Francis of Connecticut, Inc.* v. *Historic District Commission,* 284 Conn. 838, 847, 937 A.2d 39 (2008).

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Alvord Investment, LLC* v. *Zoning Board of Appeals,* 282 Conn. 393, 401–402, 920 A.2d 1000 (2007). "The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Alexson* v. *Foss,* 276 Conn. 599, 605, 887 A.2d 872 (2006).

Section 46b-56d (a) expressly provides that a parent proposing the relocation of his or her minor child must prove by a preponderance of the evidence that (1) the relocation is for a legitimate purpose, (2) the proposed location is reasonable in light of that purpose and (3) the relocation is in the best interests of the child. Subsection (b) of the statute then identifies the factors to be considered by the trial court in determining whether a request for relocation should be approved. Although

the defendant claims that the statute requires a court to assume that the parent that proposes the relocation will relocate if the court finds that such parent has met his or her burden with respect to the first two of the three prongs of § 46b-56d (a), the statute clearly contains no such requirement.

"We are not free . . . to create ambiguity when none exists . . . we cannot accomplish a result that is contrary to the intent of the legislature as expressed in [a statute's] plain language. . . . [A] court must construe a statute as written. . . . The intent of the legislature, as [our Supreme Court] has repeatedly observed, is to be found not in what the legislature meant to say, but in the meaning of what it did say." (Internal quotation marks omitted.) *LaPlante* v. *Vasquez*, 136 Conn. App. 805, 814, 47 A.3d 897 (2012). "[T]his court cannot, by judicial construction, read into legislation provisions that clearly are not contained therein." (Internal quotation marks omitted.) *Stone-Krete Construction, Inc.* v. *Eder*, 280 Conn. 672, 682, 911 A.2d 300 (2006); see *Walter* v. *State*, 63 Conn. App. 1, 8, 774 A.2d 1052 ("We are also mindful that [t]he court may not, by construction, supply omissions in a statute or add exceptions or qualifications, merely because it opines that good reason exists for so doing. . . . In such a situation, the remedy lies not with the court but with the General Assembly." [Internal quotation marks omitted.]), cert. denied, 256 Conn. 930, 776 A.2d 1148 (2001).

We conclude that the relocation statute does not require the analysis claimed by the defendant, and we decline her invitation to read an additional criterion into the statute. The court would have had to speculate that the defendant would move to Boston even if her motion to modify the parenting provisions of the dissolution agreement was denied. When asked during the trial whether she planned to relocate regardless of the court's decision, the defendant testified that she did

not know what she would do. Ronald Naso, the court-appointed neutral evaluator, testified that he had interviewed the defendant and that she "made it very clear to me from the outset that she would not relocate without [the parties' son]."[7]

We also note that the defendant never argued, during closing arguments before the trial court or in her post-trial brief, that the court had to assume she would relocate if it found that she had met her burden of proof with respect to the first two of the three prongs of § 46b-56d (a). "Practice Book § 60-5 provides in relevant part: The court shall not be bound to consider a claim unless it was distinctly raised at the trial . . . . Moreover, [i]t is well settled that a trial court can be expected to rule only on those matters that are put before it. . . . Put another way, [t]o permit a party to raise a different ground on appeal than [that] raised during trial amounts to trial by ambuscade, unfair to both the trial court and to the opposing party." (Citation omitted; internal quotation marks omitted.) *Spears* v. *Elder*, 124 Conn. App. 280, 293–94, 5 A.3d 500, cert. denied, 299 Conn. 913, 10 A.3d 528 (2010). For all of the foregoing reasons, the defendant's first claim fails.

## II

The defendant's next claim is that the court based its determination that the proposed relocation was not in the best interests of the minor child on two improper considerations. Specifically, she argues that the court "penalized" her for having (1) married an out-of-state husband and having two children with him and (2) made previous requests to relocate to Massachusetts. The defendant maintains that the court's "punitive

---

[7] The defendant testified that she made no such statement to Naso. The court, of course, as the sole arbiter of credibility, was free to accept Naso's testimony. See *Emrich* v. *Emrich*, 127 Conn. App. 691, 701 n.3, 15 A.3d 1104 (2011).

approach" arose from its substitution of "its own idiosyncratic public policy views for the public policy as enacted by the legislature."

Our careful review of the court's decision reveals an evenhanded, thoughtful and meticulous analysis of the statutory criteria as applied to the facts of this case. We first emphasize that the criteria set forth in § 46b-56d (b), which a court is required to consider in determining whether to approve a proposed relocation of a child, are not all inclusive. Section 46b-56d (b) lists five factors for consideration but expressly states that "consideration shall not be limited to" those five factors. Clearly the intent of the statute was to provide a trial court with flexibility in its assessment of competing interests.

In its sixteen page memorandum of decision, the court, in two sentences, addresses the defendant's remarriage and previous attempts to relocate the parties' minor child in the section titled "[t]he degree to which the relocating parent's and the child's life may be enhanced economically, emotionally and educationally by the relocation." See General Statutes § 46b-56d (b) (4). After reciting the defendant's claims of the hardships the family unit has endured because of Powell's commute to Boston, the court noted: "[T]he defendant and Powell married and had children with the full knowledge of the court's orders and that the defendant had twice been denied relocation. While the court generally believes that the primary residential parent should be given some latitude in these cases and that one should not be totally bound by earlier life decisions, there is a distinct difference in this case from one in which no prior efforts to move in the past has been litigated."

The record fully supports the court's statements. At the time of the dissolution, the defendant wanted to

relocate with the parties' son to Springfield, Massachusetts, and the plaintiff strongly opposed the relocation. When the report from the family relations office recommended against the relocation, the defendant agreed to remain in Connecticut. The "32.5 driving miles" restriction was agreed to by the parties and incorporated into the dissolution judgment. Less than two years later, the defendant filed a motion to relocate with their son to Boston. After the matter was litigated at trial, the court denied her motion. She subsequently filed this second postdissolution motion to relocate with the parties' son to Boston. During the trial on the present motion, Powell testified that he was aware of the dissolution agreement's mileage restriction and of the defendant's previous unsuccessful attempts to relocate to Massachusetts with the parties' son prior to marrying the defendant. After the defendant and Powell married, their lives were impacted by the distance between the minor child's primary residence in Stamford and Powell's residence in the Boston area. Considerable evidence was presented to the court regarding the problems engendered by maintaining residences in the Boston area and Stamford. The court, while not unsympathetic to the situation, accurately pointed out that the defendant and Powell married with the knowledge that these restrictions were in place.

It was not improper for the court to mention these facts in its decision. Moreover, we find absolutely no support whatsoever for the defendant's position that the court penalized the defendant for marrying and having children with an out-of-state husband or for making previous requests to relocate with the parties' son. Accordingly, the defendant's second claim fails.

### III

The defendant's third claim is that the court improperly required that she prove that the proposed relocation was an economic necessity. She argues that the

court held her to a higher standard than the criterion set forth in the relocation statute. One of the listed factors for consideration in § 46b-56d (b) is "the degree to which the relocating parent's and the child's life may be enhanced economically, emotionally and education-ally by the relocation." General Statutes § 46b-56d (b) (4). It is the defendant's position that the court ignored the ways in which their lives would be *enhanced* and, instead, imposed the burden that she prove the *economic necessity* for the relocation.

As previously discussed, the defendant presented extensive evidence at trial about Powell's employment obligations in Boston and that he was the sole financial provider for their family unit. Additionally, the defendant presented evidence that allegedly demonstrated that Powell's annual income had decreased as the result of his travel time in commuting between households and that his continued employment with his current firm was in jeopardy unless he committed himself to the Boston office five full workdays a week. In the defendant's posttrial brief, she claimed that "[t]he evidence shows that the current situation is unsustainable and would lead to the termination of Mr. Powell's employment in Boston." The defendant clearly was attempting to impress upon the court her perceived seriousness of their financial situation if the court denied her motion to relocate with the minor child.

In the section of the court's decision titled "[t]he degree to which the relocating parent's and the child's life may be enhanced economically, emotionally and educationally by the relocation," the defendant now challenges the last sentence. The court, after a two page discussion, stated: "The court cannot find that the defendant has established the economic necessity of the requested relocation by a preponderance of the evidence." That is the only reference to the words "economic necessity" in the entire decision. Significantly,

the court referenced the correct statutory criterion from § 46b-56d (b) in the title and made appropriate factual findings in connection with that criterion prior to its sole reference to "economic necessity."

In considering the fourth factor in subsection (b) of the statute, the court found: (1) "[e]conomically and educationally, there will be little if any change unless Powell continues to ignore his employment responsibilities and is terminated from his job"; (2) the evidence at trial demonstrated that Powell could commute by train to Boston to increase the time at work; (3) the evidence at trial demonstrated that Powell held licenses that would allow him to be employed in a number of different positions within the financial services industry; (4) the evidence at trial demonstrated that the defendant and Powell had given "little if any thought" to alternative plans beyond moving to Boston, such as relocating within the mileage restriction to the New Haven area; and (5) although relocation to Boston would be "easier" on Powell and "nicer" for the defendant, it was "far less clear how it would directly benefit the minor child." Thus, although the court stated that the defendant failed to establish the economic necessity for the relocation, the decision reflects that the court properly and carefully analyzed the evidence pursuant to the statutory criterion.

If the court improperly used the word "necessity" in a single sentence of the opinion, after correctly stating the appropriate statutory criterion and analyzing the evidence pursuant to that criterion, we conclude that the error was harmless. See *Berry* v. *Berry*, 88 Conn. App. 674, 678, 870 A.2d 1161 (2005). When the discussion in the decision is taken as a whole, the mistaken use of the word "necessity" does not undermine our confidence in the court's conclusions.

## IV

The defendant's final claim is that the court miscon-strued the relocation statute as it relates to the needs and interests of the plaintiff. It is the defendant's posi-tion that the court "treated the relationship between [the plaintiff] and [the parties' minor child] as sacro-sanct, such that *any* change in the current parenting plan was intolerable." (Emphasis in original.) She argues that the court improperly rejected her suggested alternative visitation arrangements as being an unsuit-able substitute for parenting time, instead of focusing on the fact that the father-son relationship would not end.[8] In doing so, the defendant claims that the court's conclusions were contrary to the provisions of the relo-cation statute.

This claim of the defendant focuses on the court's analysis of two of the statutory factors for consider-ation, namely, "the impact of the relocation on the quan-tity and the quality of the child's future contact with the nonrelocating parent"; General Statutes § 46b-56d (b) (3); and "the feasibility of preserving the relation-ship between the nonrelocating parent and the child through suitable visitation arrangements." General Stat-utes § 46b-56d (b) (5). As is often the situation in reloca-tion cases, the trial court was faced with the daunting task of assessing and weighing the competing interests of the parents and determining the best interests of the minor child in light of those competing interests. "We recognize the difficult issues that relocation cases pre-sent. The interests of the custodial parent who wishes to begin a new life in a new location are in conflict

---

[8] In her appellate brief, the defendant states: "The court further expressed 'no doubt' that, if relocation were granted, a parenting schedule could be arranged that would provide [the plaintiff] with the same 'or perhaps even more' time with his son. None of this was good enough for the trial court. But it *is* good enough for the legislature, and reversal is required for that reason." (Citation omitted; emphasis in original.)

with those of the noncustodial parent who may have a strong desire to maintain regular contact with the child." (Internal quotation marks omitted.) *Taylor* v. *Taylor*, 119 Conn. App. 817, 824, 990 A.2d 882 (2010). "Trial courts frequently and regrettably must address situations in which no feasible solution is ideal." *Emrich* v. *Emrich*, 127 Conn. App. 691, 704, 15 A.3d 1104 (2011).

It was undisputed that the proposed relocation with the parties' minor son to Boston would eliminate the midweek overnight visits and the Sunday overnight visits on alternating weekends with the plaintiff. Additionally, the relocation would not allow for the plaintiff's active participation in their son's sporting activities and events.[9] Because the defendant recognized that it would be difficult for the minor child to travel from Boston to Fairfield[10] and back every alternating weekend, she proposed that the plaintiff travel to Boston one weekend per month and visit with their son in a hotel room.[11]

With that evidence before the court, it made the following findings in its memorandum of decision: (1) it was very clear that the quality, if not the quantity, of the plaintiff's contact with their son would be "significantly diminished"; (2) the father-son relationship would be changed from that of an active and involved parent with a willing and eager child to that of a very involved visitor; (3) the plaintiff would no longer be able to coach his son on a regular basis or spend casual mid-week

[9] The plaintiff testified that he coached his son's little league baseball and flag football teams.

[10] The plaintiff resides in Fairfield. He testified that he kept the marital home because their son had lived there from the time of his birth until the divorce, and the plaintiff felt it that it was important that their son "have the same [bed]room, have the same yard, have the same family room, have the same dog, have the same location and the familiarity with my house."

[11] She also indicated that she and Powell might purchase a home in the Boston area in the future and that, if economically feasible, they might keep Powell's condominium unit and permit the scheduled visitation to take place there.

evenings with him; (4) the plaintiff's relationship with his son is based on their frequent contact and repeated interaction with respect to a panoply of different interests and activities; (5) this relationship "can be preserved only by the father and son continuing to live in the relative close proximity that they now enjoy"; and (6) although alternate visitation arrangements could be made that might provide the plaintiff with the same, or perhaps even more, total time with his son, any extra time would not necessarily preserve the relationship because "[d]istance and travel combined with parental time in a hotel setting rather than their home can negate added opportunity afforded by more time." For those reasons, the court concluded that the proposed relocation was not in the best interests of the minor child.

We are persuaded that the court carefully applied the statutory criteria to the evidence presented at trial in reaching its determination. Although the defendant claims that the court misapplied the criteria and would not allow *any* change in the parenting plan, we believe that the court's well reasoned decision belies that argument. It is understandable that the defendant disagrees with the ultimate conclusion of the court, but the evidence at trial supports that conclusion. The court did not misapply the law nor did it abuse its discretion in denying the defendant's postdissolution motion to relocate the parties' son to Boston.

The judgment is affirmed.

In this opinion the other judges concurred.