******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CHRISTINA INGRAM *v.* BRIAN J. INGRAM
(AC 44392)

Bright, C. J., and Alvord and Lavine, Js.

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dis-
solved, appealed to this court from the judgment of the trial court
granting the plaintiff's motion for modification of custody, seeking to
relocate with the parties' minor child to Poughkeepsie, New York. *Held*
that the trial court properly granted the plaintiff's motion for modifica-
tion of custody: contrary to the defendant's contention that the trial
court ignored the parties' informal agreement for alternating weekly
parenting time with the child for the seven to eight months leading up
to the hearing on the plaintiff's motion, that court heard extensive
testimony from both parties as to that schedule, which the parties had
in place during the unique circumstances of the child's remote learning
during the COVID-19 pandemic, and, now that in-person schooling had
resumed, neither party sought a continuation of that schedule, the court's
previous ex parte order recognized that alternating weekly parenting
schedule, and the court's statement that it was in the child's best interests
to maintain the continuity of living with his mother and his brother
found support in the record as it reasonably could be construed as a
reference to the parties' former parenting time schedule; moreover, the
court's finding that the plaintiff had a more active role in the child's life
was not clearly erroneous, as there was evidence in the record to support
that finding, including the plaintiff's testimony that she primarily cared
for the child from his birth and throughout his childhood, and the
defendant's testimony that he had, at times, missed the child's doctor's
appointments and parent-teacher conferences due to his work schedule;
furthermore, the defendant did not point to any evidence to support his
argument that the court prejudged the motion on the basis that the
plaintiff already had moved to Poughkeepsie, and, to the contrary, the
court applied the criteria set forth in the applicable statute (§ 46b-56d)
to the evidence presented at the hearing in reaching its determination,
and there was sufficient evidence presented for the court's consideration
of the educational component listed in § 46b-56d (b), as the plaintiff
provided testimony as to the educational plan for the child following
relocation.

Argued February 2—officially released March 29, 2022

*Procedural History*

Action for the dissolution of a marriage, and for other
relief, brought to the Superior Court in the judicial dis-
trict of Danbury, where the court, *Eschuk, J.*, rendered
judgment dissolving the marriage and granted certain
other relief in accordance with the parties' separation
agreement; thereafter, the court, *Truglia, J.*, granted
the plaintiff's postjudgment motion for modification of
custody, and the defendant appealed to this court.
*Affirmed.*

*Matthew D. Popilowski*, for the appellant (defen-
dant).

*Lita M. Ward*, for the appellee (plaintiff).

*Opinion*

ALVORD, J. The defendant, Brian J. Ingram, appeals from the judgment of the trial court granting the postdissolution motion filed by the plaintiff, Christina Ingram, for modification of custody, seeking to relocate the parties' minor child to Poughkeepsie, New York. On appeal, the defendant claims that the court erred in granting the plaintiff's motion. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to the defendant's appeal. The parties were married in 2012 and have one minor child together, who was born in 2013. In 2017, the plaintiff commenced a dissolution action against the defendant. On December 19, 2017, the court, *Eschuk, J.*, rendered a judgment of dissolution, which incorporated a November 14, 2017 separation agreement executed by the parties (agreement). Both parties were self-represented at the time of the dissolution. The agreement provided that the parties would share joint legal custody of their child and that the child's primary residence would be with the plaintiff. The plaintiff also lives with her older son, who was sixteen years old at the time of the hearing on the motion for modification, and the two children have a close relationship. At the time of the dissolution, the plaintiff relocated to Brookfield, and the defendant lived in Bethel. The agreement also provided "[a]s to visitation": "[s]hared visitation and will be mutually agreed upon if any changes need to be made due to work schedule change. Currently: with Mom Monday–Thurs, with Dad Thurs evening until Sun." The agreement provided that pick up and drop off would be "shared 50/50," and that the holiday and school vacation schedule would be an "[a]lternating schedule." The agreement is silent as to possible relocation by either party.

On February 13, 2020, the plaintiff filed a motion for modification in which she represented that she was engaged, was moving to Poughkeepsie, and wished to change the child's school district.[1] She requested that the court order parenting time as follows: "Sun night–Friday with mother. Fri eve–Sun night with father. Alternate weekends with parents."[2] The court scheduled a hearing on the plaintiff's motion for March 23, 2020, but the hearing did not proceed because of the public health emergency declaration regarding the COVID-19 pandemic. In April, 2020, the plaintiff began living with her fiancé in his home in Poughkeepsie.

After learning of the plaintiff's move, the defendant filed, on August 13, 2020, an application for an emergency ex parte order of custody, in which he sought temporary custody of the child on the basis that the plaintiff had moved to Poughkeepsie and the parties did not have a "clear plan . . . for the start of the school year . . . ." On the same day, he filed a motion

for modification of custody, in which he requested primary physical custody of the child and appropriate visitation with the plaintiff.

On August 27, 2020, the court, *Truglia, J.*, entered orders with respect to the defendant's application for emergency ex parte order of custody. The court ordered the parties to register the child in school "in the Bethel Public School District for the 2020-2021 school year, and until further order of the court." The court further ordered: "If the Bethel Public School District is utilizing all-remote instruction, then the parties will continue the alternating weekly parenting schedule in effect since the start of remote learning. If the school district utilizes a partial in-person instruction model, or a hybrid model consisting of some in-person and some remote learning on back-to-back week days, the parties will continue the alternating weekly schedule. If the school district only offers a staggered weekly schedule, then the defendant will provide the child with his primary residence during the week and the plaintiff will have the child from Friday afternoon through Monday morning."

On October 5, 2020, the court held a hearing on both parties' motions for modification. Both parties testified, along with the plaintiff's fiancé and the defendant's father. On October 7, 2020, the court issued an order granting the plaintiff's motion for modification, in which it made the following findings of fact. The plaintiff currently is employed as an emergency room technician at Danbury Hospital and takes undergraduate courses toward a degree in nursing. Although she previously had a fixed work schedule, she now has a more flexible schedule. In December, 2019, the plaintiff became engaged to Michael Mancari, a professional firefighter employed by the city of Poughkeepsie. Because of his employment, he is required to live in or near Poughkeepsie.[3] Mancari owns a home, where the plaintiff lives, and the two had planned to marry on October 10, 2020. The defendant works full-time, beginning his shift at 4 a.m., at Costco in Norwalk. The defendant had lived in his father's house in Bethel since the dissolution but recently had purchased a home in Bethel, where he planned to live with his girlfriend.

In deciding the plaintiff's motion, the court first set forth General Statutes § 46b-56d, governing postjudgment relocation, which provides: "(a) In any proceeding before the Superior Court arising after the entry of a judgment awarding custody of a minor child and involving the relocation of either parent with the child, where such relocation would have a significant impact on an existing parenting plan, the relocating parent shall bear the burden of proving, by a preponderance of the evidence, that (1) the relocation is for a legitimate purpose, (2) the proposed location is reasonable in light of such purpose, and (3) the relocation is in the best interests of the child.

"(b) In determining whether to approve the relocation of the child under subsection (a) of this section, the court shall consider, but such consideration shall not be limited to: (1) Each parent's reasons for seeking or opposing the relocation; (2) the quality of the relationships between the child and each parent; (3) the impact of the relocation on the quantity and the quality of the child's future contact with the nonrelocating parent; (4) the degree to which the relocating parent's and the child's life may be enhanced economically, emotionally and educationally by the relocation; and (5) the feasibility of preserving the relationship between the nonrelocating parent and the child through suitable visitation arrangements."

The court found that the plaintiff's relocation was for a legitimate purpose and that the proposed location was reasonable, on the basis that she is getting married and her future husband is required to live in the town in which he works. The court stated that there was "no basis in the evidence for [it] to find that the plaintiff's decision to remarry and move an hour away was intended to limit the defendant's parenting time with his son or damage the relationship in some way." The court found that both parties "always had their son's best interests at heart and continue to do so," and "overall, that the child's life will be enhanced by the move."

The court further found that the plaintiff "has been the child's primary caregiver for most of his life. The court does not by this statement imply that the defendant has not been actively involved in the child's life at every step. The evidence indicates that the defendant has been as caring, loving and devoted to the child as the plaintiff. However, the court finds that the plaintiff has had a more active role than the defendant. The court also finds that it is in the child's best interest[s] to maintain the continuity of living with his mother, [brother], and pets, as much as possible. The strong relationship between the child and his father can be preserved and possibly strengthened, by giving the father additional weekend quality time with the child."

The court ordered that the parties retain joint legal custody of the child, with joint decision-making authority for all major decisions. The court issued the following orders: "Commencing November 1, 2020, the plaintiff will provide the child with his primary residence. The child will reside with the plaintiff each week from Monday through Friday. The child will attend school in the Arlington School District for the 2020-2021 school year and thereafter, until further order of the court. The defendant will have parenting time with the child three weekends per month, starting Fridays after school until Sunday afternoon at 6:00 p.m. (or Monday afternoon at 6:00 [p.m.] if Monday is a legal holiday and there is no school). Each parent will be responsible for picking the child up at the start of his or her parenting

time. The parties will continue to alternate or share holidays, birthdays, school vacations, and other special occasions as before. Each party will have four uninterrupted weeks of vacation each summer, two of which will be consecutive."[4]

The defendant thereafter filed motions: to reargue; for the appointment of a guardian ad litem; for referral to family relations; to open, set aside, or vacate the judgment; and for stay. The plaintiff filed an objection to the defendant's motion to open, set aside, or vacate the judgment. After oral argument on November 4, 2020, the court denied the defendant's motions. This appeal followed.

On appeal, the defendant claims that the court erred in granting the plaintiff's motion for modification and permitting her to relocate to Poughkeepsie. "Our standard of review of a trial court's decision regarding . . . relocation orders is one of abuse of discretion. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . Further, [t]he trial court has the opportunity to view the parties first hand and is therefore in the best position to assess the circumstances surrounding a dissolution action, in which such personal factors as the demeanor and attitude of the parties are so significant." (Internal quotation marks omitted.) *Tow* v. *Tow*, 142 Conn. App. 45, 52, 64 A.3d 128 (2013).

"Similarly, in a postjudgment relocation case following a dissolution of marriage action, the court is privy to the history of the case, the parties' respective situations and how the parties interact with one another. Therefore, [w]hen reviewing a decision for an abuse of discretion, every reasonable presumption should be given in favor of its correctness." (Internal quotation marks omitted.) *Taylor* v. *Taylor*, 119 Conn. App. 817, 821, 990 A.2d 882 (2010).

Moreover, "[a]ppellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding on this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence in the record to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Emrich* v. *Emrich*, 127 Conn. App. 691, 700–701, 15 A.3d 1104 (2011).

The defendant first argues that the court failed to "start from the correct reference point" in that it failed to consider the parties' informal agreement for alternating weekly parenting time with the child for seven to eight months leading up to the hearing on the plaintiff's

motion. He argues that the court's determination that it was in the best interests of the child to maintain the continuity of living with his mother and brother ignores the fact that the parties were equally sharing parenting time at the time of the hearing.[5]

We disagree that the court ignored the parties' informal agreement as to parenting time. Less than two months earlier, the court had entered an ex parte order that recognized the parties' "alternating weekly parenting schedule in effect since the start of remote learning." Moreover, the court, during the hearing on the motions for modification, heard extensive testimony from both parties as to the informal alternating weekly parenting schedule the parties had in place during the unique circumstances of remote learning. It is not surprising that the court did not discuss that schedule in its order granting the motion for modification, as neither party sought a continuation of the schedule, now that in-person schooling had resumed. Both parties testified that, prior to March, 2020, the defendant had parenting time Tuesday overnight and alternating weekends, with the plaintiff having parenting time the rest of the time. Thus, the court's statement that it was in the child's best interests to maintain the "continuity of living with his mother," brother, and pets, finds support in the record, in that it reasonably can be construed as a reference to the parties' parenting time schedule in place prior to March, 2020.

The defendant also argues that the court's determination that the plaintiff had a more active role in the child's life "has no reasonable basis in the facts at the time of the hearing." He argues that he "was the one who had taken steps prior to the start of the 2020-2021 school year to get the court to act so that the parties could enroll their son in a school." We conclude that the court's finding was not clearly erroneous.

The plaintiff testified that she primarily cared for the parties' child from his birth and throughout his childhood. Specifically, she testified: "I'm the one that takes him to the doctor and makes those appointments for well and sick visits. I'm the one that even knows he needs to make his every six months dentist appointment and I take him to the dentist. I take him to get all his haircuts." She testified that she has volunteered in the child's school. She testified that she primarily has attended parent-teacher conferences and that she did not see the defendant in attendance at the virtual open house for the child's new school.[6]

The defendant testified, with respect to his participation in the child's medical care, that "depending on our work schedules, you know, if I was working mornings and she was at work and I was able to take [the child] or [his older brother] to the doctor's, I would take either one as needed. When I was working nights there was a couple times that I couldn't leave early or I couldn't

get the day off and she would have to assist with that." He explained that the plaintiff would schedule parent-teacher conferences when he was at work, or at times they were in the evening and he would stay home with the children so that the plaintiff could attend. On the basis of this evidence, the court found that "the defendant has been as caring, loving and devoted to the child as the plaintiff," but also found that "the plaintiff has had a more active role than the defendant." On appeal, "we do not retry the facts or evaluate the credibility of witnesses." (Internal quotation marks omitted.) *Taylor* v. *Taylor*, supra, 119 Conn. App. 825. Because there is evidence in the record to support the court's finding, we conclude that the court's finding was not clearly erroneous.

The defendant also argues that the court's granting of the plaintiff's motion "acted as a ratification of the plaintiff's prior unauthorized relocation." We disagree. Although the court heard evidence that the plaintiff, during the pendency of her motion for modification, had moved to live with her fiancé in his home in Poughkeepsie, the defendant has not pointed to any evidence that the court prejudged the motion on that basis. To the contrary, the court applied the statutory criteria to the evidence presented at the hearing in reaching its determination.[7]

Lastly, the defendant contends that the plaintiff failed to provide evidence as to the educational component of one of the factors for the court's consideration listed in § 46b-56d (b), namely, "the degree to which the relocating parent's and the child's life may be enhanced economically, emotionally and educationally by the relocation . . . ." We disagree.[8]

Although the plaintiff recognizes that "there was no indication or evidence . . .  educationally that it was better or worse being in the Arlington Central School District than the Bethel School District," the plaintiff did provide testimony as to the educational plan for the child following relocation. Specifically, she testified that the child would attend Arlington Central School District, which then was operating on a hybrid remote/in-person schedule, and that the school was about five minutes driving distance from the plaintiff's home. She testified that she would drive the child to school and pick him up. After hearing the evidence with respect to the three components listed in this factor, the court found that "overall  .  .  .  the child's life will be enhanced by the move." It thereafter ordered the parties to enroll the child in the Arlington Central School District. On this record, we cannot conclude that there was insufficient evidence for the court's consideration of the educational component of the fourth factor listed in § 46b-56d (b).[9]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Although the plaintiff requested sole legal custody in her motion for modification, she withdrew that request during the hearing on the motion for modification and requested that the court make no change to the joint legal custody in effect.

[2] In her motion for modification, the plaintiff also requested that the court order child support. She maintained in her motion that the agreement's language that the defendant would "fully financially support [the child]" was vague and needed clarification.

[3] Mancari also had other business interests in the Poughkeepsie area, including multifamily rental homes.

[4] The court also ordered the defendant to pay "weekly child support in the amount of $209, which is the presumptive weekly amount pursuant to the child support guidelines . . . . The parties will share the cost of the child's unreimbursed medical expenses and work-related child care expenses 57% by the defendant and 43% by the plaintiff." (Citation omitted.) See footnote 2 of this opinion.

[5] The defendant additionally challenges the court's finding that "[t]he strong relationship between the child and his father can be preserved and possibly strengthened, by giving the father additional weekend quality time with the child." The defendant argues that "[t]his finding of fact cannot be sustained where the defendant at that time was enjoying spending two weeks a month with his son." He further emphasizes that he works from 4 a.m. to 1 p.m. on Sundays, and therefore the court's conclusion that its awarding parenting time from Friday after school until Sunday at 6 p.m. on three weekends per month constituted "additional weekend quality time" "has no basis in fact." We disagree.

The parties have cooperated in establishing various parenting schedules since the entry of the dissolution judgment. The alternating weekly parenting schedule that the parties informally agreed to in March, 2020, was feasible because of the remote schooling as a result of the COVID-19 pandemic. Prior to that point, as both parties acknowledged, the informal parenting schedule between the parties was such that the defendant had parenting time Tuesday nights overnight and alternating weekends, with the plaintiff having parenting time the remainder of the time. When in-person school resumed, the alternative weekly parenting schedule was no longer possible. Thus, the court's finding that the defendant was provided "additional weekend quality time," made in the context of its awarding the defendant parenting time on three weekends per month, was not clearly erroneous, in light of the parties' testimony that prior to March, 2020, the defendant had weekend parenting time on every other weekend.

[6] The defendant testified that he was not able to participate in the virtual open house because he was having issues with the Zoom platform.

[7] To the extent that the defendant seeks to argue that the plaintiff's move to Poughkeepsie was unauthorized, he points to no court order that he alleges her to have breached.

[8] The defendant relies on *Havis-Carbone* v. *Carbone*, 155 Conn. App. 848, 869, 112 A.3d 779 (2015), a case in which the plaintiff seeking to relocate with the parties' child to Texas provided no evidence regarding the child's potential education there, and the court stated on the record that it was "not making this decision based on school . . . ." (Internal quotation marks omitted.) Moreover, the court in that case improperly "granted the plaintiff permission to go to Texas with the child prior to conducting a hearing." Id., 867. Thus, *Havis-Carbone* is distinguishable.

[9] The defendant argues in the alternative that, "[e]ven if the court had considered educational enhancement as required, the evidence would not have supported a finding that their son's education would be enhanced." He points to the evidence regarding the child's "existing education" as demonstrating that "there would be no enhancement." Specifically, he argues that "[t]he evidence before the court was that it had actually ordered the parties to enroll their son in the defendant's school district just one month prior to the decision presently at issue. . . . The evidence was that their son was enrolled in the same school system that he had been already . . . attending in past years. . . . And the defendant's school system had just returned to full-time in-person learning the week prior to the hearing." (Citations omitted.)

The defendant essentially requests that we reweigh the evidence in his favor. As noted previously, "we do not retry the facts or evaluate the credibility of witnesses." (Internal quotation marks omitted.) *Taylor* v. *Taylor*, supra, 119 Conn. App. 825.