******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LISA HAVIS-CARBONE *v.* ARTHUR CARBONE, JR.
(AC 36353)

Lavine, Beach and Mullins, Js.

*Submitted on briefs February 2—officially released March 6, 2015\**

(Appeal from Superior Court, judicial district of New Britain, Dolan, J.)

*Alfred F. Morrocco, Jr.* filed a brief for the appellant (defendant).

*Lisa Havis*, self-represented, the appellee (plaintiff) filed a brief.

*Opinion*

PER CURIAM. The defendant, Arthur Carbone, Jr., appeals from the postdissolution judgment rendered by the trial court granting the motion for modification filed by the self-represented plaintiff, Lisa Havis-Carbone.[1] In filing the motion, the plaintiff sought permission to relocate with the parties' minor child to the state of Texas. On appeal, the defendant claims, in essence, that the court, *Dolan, J.*, improperly granted the motion for modification by giving the plaintiff permission to relocate prior to hearing evidence, especially in light of the plaintiff's failure to carry her burden of proof and the court's failure to consider all of the factors prescribed in General Statutes § 46b-56d.[2] We reverse the judgment of the trial court.[3]

## I

## PROCEDURAL HISTORY

We have reviewed the record, including the entire transcript of the proceedings before the court in October, 2013, which contains the following relevant procedural history.[4] The parties were intermarried in 2005 and divorced in 2008.[5] Their only child, a daughter, was born in January, 2006. Pursuant to the judgment of dissolution, the parties shared joint legal custody of the child, whose primary residence was with the plaintiff. The defendant had visitation rights with the child. Subsequently, the judgment with respect to custody, visitation, and child support was modified a number of times. On May 6, 2010, the plaintiff filed a motion for modification to relocate with the child to Texas. The parties entered into an agreement, which was accepted by the court, *Hon. Romeo G. Petroni*, judge trial referee. Pursuant to the agreement, the plaintiff withdrew her motion for modification.

Three years later, on May 28, 2013, the plaintiff filed another motion for modification, again seeking to relocate to Texas with the child. A hearing on the motion for modification was scheduled for June 27, 2013, at which time the court, *Pinkus, J.*, approved the parties' agreement to appoint Attorney Katarzyna Maluszewski as guardian ad litem for the child.[6] The matter was continued at Maluszewski's request until August 15, 2013, at which time Judge Pinkus approved the parties' agreement to have Stephanie Stein Leite, doctor of psychology, update a prior custody evaluation.

On September 20, 2013, Attorney Alfred F. Morrocco, Jr., filed an appearance on behalf of the defendant as well as a request to continue the hearing until September 27, 2013. Judge Dolan granted the request to continue to a date uncertain. On September 23, 2013, Maluszewski filed a request for a status conference. On October 2, 2013, the plaintiff, Morrocco, and Maluszewski appeared before Judge Dolan. In response to an inquiry from Judge Dolan, Morrocco stated that the

defendant was not present because he was on a long planned vacation. Morrocco also stated that he had made efforts to schedule the status conference to a time when the defendant could be present, but he was unsuccessful in rescheduling it. The following colloquy occurred.

"The Court: September 20. So you knew on September 20 that he wasn't going to be here because it was a long planned vacation?

"Attorney Morrocco: Right. And I told that to the [guardian ad litem], and I told everyone. I asked the court can we change it, and they said 'no,' so I'm here. It's a status conference. We have a hearing date for November 4. She wants to move it forward. . . . I have dates available.

"The Court: Well, how am I going to move it forward?

"Attorney Maluszewski: I know—actually if mom— if mom could talk?

"The Court: No . . . .

"[The Plaintiff]: I beg your . . .

"The Court: How am I going to move it forward in terms . . .

"Attorney Maluszewski: I don't know, Your Honor, but . . .

"The Court: if we have to have a hearing?

"Attorney Maluszewski: the hearing was scheduled for September 23, it was marked off. Mom . . .

"The Court: All right. Why was it marked off?

"Attorney Maluszewski: I believe initially, I don't think you were here, and I think Judge Prestley had a personal engagement, so it was marked off and then Attorney Morrocco came into the file.

"The problem is mom doesn't have a job and mom's going to lose this job in Texas if she doesn't go soon. So if she waits until November, she might not have a job. And she doesn't have a job here because it was a temporary job. And I'm concerned for the child because this child lives with mom.

"The Court: No, I understand that.

"Attorney Maluszewski: So, I'm thinking is there . . . if there's anything you can do, Your Honor, as to hear this earlier somehow, some way.

"The Court: How am I going to do that?

"Attorney Maluszewski: I don't know, Your Honor.

"[The Plaintiff]: This has been . . . .

"The Court: No, I understand, you have a perfect right to be enraged. I would be furious.

"[The Plaintiff]: I've been enraged. I was enraged. I

thought we were coming here on the twenty-third . . . .

"The Court: Right.

"[The Plaintiff]: for the hearing, and I've been ready. I've been ready to go. My house is packed, my payments are behind. I've . . . my job has expired that I had here, and I'm all ready to relocate. And then I was told that he—that Mr. Carbone has since hired Attorney Morrocco . . . .

"The Court: *I'm going to let you go now, and I'm going to—you're going to come back here for a hearing in December.*

"[The Plaintiff]: Thank you." (Emphasis added.)

Immediately thereafter, the court and parties agreed to return to court a week later, on October 9, 2013, at 2 p.m., in order for Morrocco to present the plaintiff's settlement proposal to the defendant. The following colloquy occurred:

"Attorney Morrocco: I asked them to give me something that they're willing to accept to settle this case, and I'll present it to him. I'll say, 'Look, you don't know what the judge is going to do, but you do know that this is available.'

"The Court: *No, but you can tell him you know what the judge is going to do if there's a doctor's report that says that she ought to be able to relocate.* You can tell him you do know what the judge is going to do.

"[The Plaintiff]: Just so you know, I did offer a proposal.

"The Court: No, no, that's okay. We'll get this straightened out. If you two can't work out the terms, I'll work out the terms . . .

"Attorney Morrocco: Right.

"The Court: *but you're going to be able to go to Texas.*

"[The Plaintiff]: Thank you." (Emphasis added.)

The parties, Morrocco, and Maluszewski appeared before Judge Dolan on October 9, 2013, at which time Maluszewski stated that the parties had not reached an agreement. The court immediately stated: "Take the stand." The following colloquy occurred.

"Attorney Morrocco: Your Honor, if we're going to have a hearing, then I think that this was a status conference.

"The Court: No . . . it was not a status conference.

"Attorney Morrocco: Yes, it was because we have a hearing date set for November 7.

"The Court: All right. *Then you can go to Texas*, and I'll put this down in January. All right?

"Attorney Morrocco: Your Honor, first of all, if you're making a decision like that it's going to disrupt an entire family. He's got to be here, too.

"The Court: *But you're going to get a hearing, but she's going to go. I'm not going to have her lose her job. She's going. I'm giving her permission to move to Texas.* Will you come back here for the hearing?

"[The Plaintiff]: Yes.

"The Court: Then I'm going to . . . do you have any objection? Do you think that's in the best interest of . . .

"Attorney Maluszewski: I do, Your Honor.

"[The Defendant]: May I speak, please?

"The Court: Sure.

"[The Defendant]: What hasn't been taken into consideration is that I have two other children in the home, a three and a four year old that grew up with the seven year old daughter. Her stepmom is in the house. We can provide . . . .

"The Court: *Sir, I'm not doing this that way. You can have a full hearing, but she's going to be able to go to Texas now and then come back for the full hearing.* This was not down for a status conference today.

"Attorney Morrocco: Yes, it was.[7]

* * *

"Attorney Morrocco: Because we had—he had a hearing date.

"The Court: *He's going to get a full hearing. He can put on as many witnesses as he wants, but she's going to get to go to Texas until that happens.*

"Attorney Morrocco: Yeah, but, Your Honor, that prejudices . . . .

"The Court: I'm well aware of what that does.

"Attorney Morrocco: Okay. But that prejudices his case. It puts me in a predicament; to ask for an independent judicial review.

"The Court: I'm not going to give him one. You can file any appeal you want. *I'm telling her that she can go to Texas now.* You've got an evaluation where the doctor says that she should be permitted to go to Texas. Correct?

"Attorney Maluszewski: Correct.

"The Court: And she's going to lose her job if she doesn't go down there now, and *I'm permitting her to go and we can have the hearing, and if I decide that it's in the best interest of the child, then I'll bring her back.* Then the child will have to come back, that's all, and that's what we'll do. But in the meantime, I'm going

to tell her she can go to Texas.

"Attorney Morrocco: Your Honor, it puts me in a predicament that I have to file motions that concern . . . *you're prejudging the case without hearing* the . . .

"The Court: *I'm not prejudging anything.*

"Attorney Morrocco: You are . . .

"The Court: I'm making a decision . . . .

"Attorney Morrocco: because we have an evaluator who is not—this was done three years ago, the same issue, exactly the same. There was an evaluation. The child was to stay here. Now, three years later there's no change in circumstances, Your Honor.

"The Court: *Counsel, file anything you want. You're going to get a full hearing, but in the meantime, she's going to get to go to Texas.*

"[The Defendant]: Your Honor, may I speak?

"The Court: Sure.

"[The Defendant]: Currently, I have my daughter about 60 percent of the time.

"The Court: You don't have her more than half the time. That's not even—nobody says that. That's not what the doctor says. That's not what the guardian ad litem says. But again, that's for the hearing. There's going to be a hearing. All I'm going to decide is what takes place between now and the hearing. I'm maintaining jurisdiction over this.

"She has to come back, but she's going to be permitted to go to Texas, and if I find that it's in the best interest of the child to stay here, then she's going . . . then the child is going to move back here and the mother can decide whether she wants to come or not. That's what we're going to do. What's the date for the hearing?"

Although a hearing was scheduled for November 4, 2013, the parties and the court agreed to hold the hearing on Tuesday, October 15, 2013. The court ordered that Liete testify first.

On October 15, 2013, the parties, Morrocco, and Maluszewski appeared before the court. Morrocco stated that he wished to file a motion to transfer the case to the Regional Family Docket in Middletown, where it had been once before. The court denied the defendant permission to file a written motion in court, but permitted Morrocco to state the motion orally.[8] The court denied the defendant's motion to transfer the case to Middletown and commenced the hearing. Leite was called to testify first. Maluszewski—the guardian ad litem—commenced the direct examination. The defendant objected to Maluszewski's examining Leite on the ground that the plaintiff had the burden of proof.[9] The

court overruled the defendant's objection on the ground that the court wanted the expert to testify first so that she "did not sit here all day."[10]

At the conclusion of Leite's testimony, Maluszuski conducted a direct examination of the plaintiff. Despite the then existing visitation orders, the plaintiff admitted that the child spent at least 50 percent of her time with the defendant and his family, who accommodated the plaintiff's work schedule when she waitressed.

The defendant then presented his case, calling the following witnesses: Sandra Carbone, the defendant's then wife and the child's stepmother; Lorraine Carbone, the child's paternal grandmother, who operated a day care center and provided a room for the child in her home; Amber Carbone, the child's half sister, who is the head teacher at a day care center affiliated with Yale-New Haven Hospital; and the defendant himself. Maluszeski also testified and was questioned by the court and cross-examined by the defendant. At the conclusion of evidence,[11] the defendant argued that the plaintiff had not carried her burden with respect to the motion for modification as there was insufficient evidence regarding the plaintiff's employment and where she intended to reside.[12]

The court stated: "I'm satisfied that she's met her burden. The only issue that I have to decide is the last one; what is in the best interest of this child taking into account the criteria that are in the statute." The defendant also argued that the court was failing to consider the defendant's relationship with the child and the improvements he had made in his ability to parent. Moreover, the defendant argued, the child stated to Leite and to Maluszewski that she did not want to move to Texas and that Maluszweski recommended that the child be provided with therapy to accommodate the relocation.

Maluszewski argued that she believed that "the child's life will be enhanced economically, emotionally if she's to move to Texas because mom will have the time available to spend with the child, as well as her older son. I do defer to . . . Leite's report as to the best interest of the child. . . .

"I do think that the relationship is going to be altered drastically with dad, but I do think that it can be maintained with some of the recommendations that I've made on the proposal. I think if, Your Honor, were open to the idea that if mom has success with jobs in Texas maybe the decision could be looked at again. I'm not quite sure how that would be, how we could do that. But I do think that mom has tried and done her best, and I do think that [the parties'] relationship has improved, however, I think she in a difficult position." The parties rested.

The parties returned to court on the following day.

The court stated: "I've been doing this a long time, both as a lawyer and a judge, and I think this is probably as difficult a case as I've ever had to decide. . . . I think the most amazing factor in this case is the spirit of cooperation that has developed between the two of you over the last three or four years since you were in Middletown. That never happens. I can't even think of a case that went to Middletown and then came back and the people actually cooperated more later. So I give you both tremendous credit for that.

"And it's obvious to me that you have a child that you are both heavily invested in. But the bottom line is, at this point, I am going to let you go to Texas. I think that you maintained your burden of proof in this matter. The relocation is clearly for a legitimate purpose, and it's clearly reasonable in light of that purpose. And I am going to let her go. But . . . *this may very well not be the end of it, because I don't know. I'm going to look at this again in April or May, after the bulk of the school year is out, and see how this year plays out, because, it may not be the right thing to do.* But we'll take it one step at a time.

"What I want you to do now is I want you . . . oh, and in terms of child support, I'm finding that the child support numbers that are listed . . . I'm going to order child support in accordance with the guidelines, which is . . . $120, but I'm going to order you pay $50 a week to her and you take $70 a week and set it aside. And that'll give you $3500 a year to spend on transportation back and forth either for her or for you. . . . I really think you have to go down there, and you have to go to Texas and see her there. And I would hope that you'll have enough sense to do that.

"Again, I'm going to look at this in April and see where we're at that particular point. There are no heroes and villains in this case. *It's an impossible case.*" The court then ordered the parties to consider the child's school calendar and "figure out" the defendant's visitation with the child between now and April or May.[13]

After the court rendered its oral decision, the defendant made an oral motion for an extension of time in which to file an appeal and a motion for stay of the court's judgment. The court granted the motion for extension of time to file an appeal, but denied the motion for stay. The court stated: "I'm not keeping her here while the appeal is . . . ."

The transcript also disclosed that the court ordered the parties to determine how and when the child would visit the defendant. The transcript reveals that none of the parties knew the school calendar, from where the child would fly, whether there were direct flights available, and if airlines provided an escort service for children. Moreover, the transcript reveals that the approaching Thanksgiving holiday was approximately

one month away, reservations were difficult to obtain, and the tickets were relatively expensive. The court directed the defendant to pay for the child's transportation. The plaintiff did not want the child to fly alone or with an airline escort. The court directed the defendant to pay for both the child and the plaintiff to return to Connecticut for Thanksgiving. The defendant objected that the burden was on the plaintiff to make the visitation work.[14] The court responded that if the defendant could not pay for tickets for the plaintiff and the child, the child would not visit.[15] The defendant represented the cost of obtaining tickets for the Thanksgiving and Christmas visit and contended that he did not have the financial resources available.[16] The court ordered that only $50 of weekly child support should be sent to the plaintiff and that the defendant should apply the remaining $70 to paying for tickets. Thereafter, the court ordered the parties to return to court on March 19, 2014. The defendant filed this appeal on November 22, 2013.

## II

## CLAIMS ON APPEAL

The defendant claims that the court improperly granted the plaintiff's motion for modification by giving the plaintiff permission to relocate prior to holding a hearing, especially in light of the plaintiff's failure to carry her burden pursuant to § 46b-56d (a) and the court's failure to consider all of the factors set forth in § 46b-56d (b). We agree with the defendant.

"As a general rule, [o]ur standard of review of a trial court's decision regarding . . . relocation orders is one of abuse of discretion. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . Further, [t]he trial court has the opportunity to view the parties first hand and is therefore in the best position to assess the circumstances surrounding a dissolution action, in which such personal factors as the demeanor and attitudes of the parties are so significant." (Internal quotation marks omitted.) *Regan* v. *Regan*, 143 Conn. App. 113, 118–19, 68 A.3d 172, cert. granted on other grounds, 310 Conn. 923, 77 A.3d 140 (2013). Where the appellant, however, does not challenge the factual findings directly but, rather, claims that she or he is challenging the court's conclusions based on its misapplication of the governing law under the relocation statute, our review of such claims is plenary, and we must determine whether the court's conclusions were legally and logically correct. Id., 119.

General Statutes § 46b-56d provides: "(a) In any proceeding before the Superior Court arising after the entry of a judgment awarding custody of a minor child and involving the relocation of either parent with the child, where such relocation would have a significant impact

on an existing parenting plan, *the relocating parent shall bear the burden of proving, by a preponderance of evidence,* that (1) the relocation is for a legitimate purpose, (2) the proposed location is reasonable in light of such purpose, and (3) the relocation is in the best interests of the child.

"(b) In determining whether to approve the relocation of the child under subsection (a) of this section, *the court shall consider,* but such consideration shall not be limited to: (1) Each parent's reasons for seeking or opposing the relocation; (2) the quality of the relationships between the child and each parent; (3) the impact of the relocation on the quantity and quality of the child's future contact with the nonrelocating parent; (4) the degree to which the relocating parent's and the child's life may be enhanced economically, emotionally and educationally by the relocation; and (5) the feasibility of preserving the relationship between the nonrelocating parent and the child through suitable visitation arrangements." (Emphasis added.)

It goes without saying that if a court announces a decision prior to hearing evidence and argument, then any purported hearing is no hearing at all. By stating the result prior to hearing evidence and argument, the court deprives the losing party of any hope of obtaining a fair, impartial decision. The transcripts of October 2 and 9, 2013, demonstrate clearly that the court granted the plaintiff permission to go to Texas with the child prior to conducting a hearing. Despite the fact that the court later conducted a hearing, the court's ultimate ruling on the motion for modification is irredeemably tainted by its statements and rulings from the bench on October 2 and 9, 2013. The taint of predetermination is evident in the manner in which the court permitted the plaintiff's case to be presented, the evidence it was willing to consider, the claimed deficiencies in the plaintiff's evidence, and the court's failure to consider all of the factors in § 46b-56 (b). The court's decision to permit the plaintiff to relocate to Texas with the child prior to conducting a hearing without emergent circumstances not only severely prejudiced the defendant[17] but also constitutes plain error in that it tends to undermine the public's confidence in our judicial system. See *State* v. *Brown,* 73 Conn. App. 751, 756, 809 A.2d 546 (2002) ("error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings" [internal quotation marks omitted]).

Generally, appellate courts presume that the trial court knows and has applied the law correctly in the absence of evidence to the contrary. See *Blumenthal* v. *Kimber Mfg., Inc.,* 265 Conn. 1, 9, 826 A.2d 1088 (2003). "[I]t is the burden of the appellant to show to the contrary." (Internal quotation marks omitted.) Id. In this case, the defendant has carried his appellate burden.

The relevant portion of § 46b-56d (a) provides that "the *relocating parent shall bear the burden* of proving by a preponderance of the evidence, that (1) relocation is for a legitimate purpose, (2) the proposed location is reasonable in light of such purpose, and (3) the relocation is in the best interests of the child." (Emphasis added.) "The fair preponderance standard requires that the evidence [induce] in the mind of the trier a reasonable belief that it is more probably than otherwise that the act in issue is true." (Internal quotation marks omitted.) *State* v. *Davis*, 229 Conn. 285, 291, 641 A.2d 370 (1994).

The defendant claims that the plaintiff failed to meet her burden and that the evidence she presented was confined to her prospective employment in her home state of Texas and the amount of time she would have to spend with the child and her one minor son. On the basis of our review of the transcript of the hearing, we agree that the plaintiff failed to present evidence addressing all of the factors in § 46b-56d (b). Even the court appeared to be skeptical of the plaintiff's proffered employment, as is reflected in the following colloquy that took place during the plaintiff's direct testimony.

"Attorney Maluszewski: I was more referring to once you move to Texas will you have more time available to [the child] and your other son?

"[The Plaintiff]: Yes. I would not be running around working part-time jobs, waitressing jobs in the evening. This opportunity is certainly going to afford me better pay, more hours . . . .

"The Court: But we don't know that. I mean this is . . . they could go out of business in a month.

"Attorney Maluszewski: I mean I talked to the designer so . . . .

"The Court: Yeah, so what? How many restaurants open and design places open and are gone in three months. I mean hundreds and thousands of them. I mean she's not going to work for Apple."[18]

Moreover, the court's uncertainty as to the degree the plaintiff would be successful in her stated purpose of relocating to Texas is further undermined by its order that the parties return to court on March 19, 2014, for a reassessment of the situation. The court stated: "And I am going to let her go. But . . . *this may very well not be the end of it, because I don't know. I'm going to look at this again in April or May, after the bulk of the school year is out, and see how this year plays out, because, it may not be the right thing to do*." (Emphasis added.) This order alone demonstrates that the plaintiff failed to carry her burden.

The defendant also argues that the plaintiff failed to provide any evidence regarding the child's education

in Texas. The transcript supports the defendant's contention. When Maluszewski asked the plaintiff what school system the child would attend, the court stated: "I'm not making this decision based on school," notwithstanding the fact that the statute explicitly provides that the court consider how the child's life may be enhanced educationally. General Statutes § 46b-56d (b) (4). Moreover, Leite testified that she did not investigate any school system in Texas and that she did not know whether the plaintiff had a home yet in Texas. In addition, the defendant contends that although the plaintiff testified that the child has a close relationship with him and his relatives, the plaintiff failed to sustain her burden to prove a viable or suitable visitation schedule to maintain those relationships.

Section 46b-56d (b) (5) requires that the court consider "the feasibility of preserving the relationship between the nonrelocating parent and the child through suitable visitation arrangements." The defendant's contention with respect to the lack of a viable means of maintaining his relationship with the child finds support in the transcript of October 19, 2013. At that time, after granting the motion for modification, the court ordered the parties to agree on how the child would visit the defendant during the upcoming Thanksgiving and Christmas holidays. It appears from the transcript that no one had a copy of the school calendar or knew the airports most convenient to the parties and the child's travel. The transcript discloses that neither the plaintiff nor the defendant had the financial means to pay for tickets during the high travel season. We are deeply troubled by the court's statement that the defendant purchase roundtrip tickets for *both* the plaintiff and the child or forgo a visit with the child. It was the plaintiff's burden to demonstrate the feasibility of travel necessary to ensure that the child could maintain her relationship with the defendant and his family. Cf. *Miggins* v. *Senofonte*, Superior Court, judicial district of Hartford, Docket No. FA-93-0390368-S (July 26, 1996) (relocating parent had plan to accompany child on flights first year, provide an 800 telephone number between nonrelocating parent and child).

Given that the plaintiff failed to present evidence on all of the factors of § 46b-56d (b), the court could not have considered all of them. The court issued a brief oral decision, but it failed to supplement its oral decision with a comprehensive written memorandum of decision. We recognize that certain situations may require the court to render an immediate oral decision. Generally, in such circumstances, the trial court later issues a memorandum of decision. See, e.g., *Wilson* v. *Wilson*, Superior Court, judicial district of Middlesex, Docket No. FA-10-4012729-S (July 24, 2013) (sole basis of father's move to accept job in Florida); *Rega* v. *Rega*, Superior Court, judicial district of Litchfield, Docket No. FA-09-4008294-S (May 31, 2012) (mother moving

to North Carolina to be closer to her family and job prospects); *Mellor* v. *Payne*, judicial district of Tolland, Docket No. FA-01-0076477-S (February 23, 2007) (mother moving for new husband's employment, which would bring substantial increase in income). In the absence of evidence encompassing all of the § 46b-56d (b) factors, we are compelled to conclude that the court did not consider them all in reaching its decision.

Moreover, there appears to be no evidentiary basis for the court to have found that it was in the best interests of the child for the plaintiff to relocate with her to Texas. The absence of § 46b-56d (b) evidence supports the defendant's position that the court pre-judged the motion for modification prior to holding a hearing. For the foregoing reasons, we conclude that the court improperly granted the plaintiff's motion for modification.

The judgment is reversed and the case is remanded for further proceedings according to law.

[1] This appeal was scheduled for oral argument before this court on February 2, 2015. Several days prior to oral argument, the plaintiff requested a continuance. The parties, however, agreed to waive oral argument. Counsel was not appointed for the child's guardian ad litem, Attorney Katarzyna Maluszewski. No brief or statement, therefore, was filed pursuant to Practice Book § 67-13.

[2] Section 46b-56d is commonly known as the relocation statute.

[3] The defendant also claims that the court improperly denied his motion to transfer the case to the Regional Family Docket in Middletown. As this claim is not likely to recur on remand, we decline to consider it. Given our conclusion that the plaintiff failed to meet her burden under § 46b-56d and that the court failed to consider all of the factors enumerated in the statute, we need not decide the defendant's claim that there had been no substantial change in circumstances since May 12, 2010.

The defendant claims as well that the court improperly denied his motion for articulation. The defendant, however, failed to file a motion for review, which is the remedy for the denial of a motion for articulation. See Practice Book §§ 66-5 and 66-7. We therefore decline to review the claim. See *Rivnak* v. *Rivnak*, 99 Conn. App. 326, 335, 913 A.2d 1096 (2007).

[4] The trial court did not issue a memorandum of decision when it granted the plaintiff's motion for modification. Although this court does not make factual findings; *Zhuta* v. *Tartaglia*, 135 Conn. App. 113, 117, 43 A.3d 183 (2012); the transcript of the proceedings before the court discloses the factual basis of the defendant's claims on appeal.

[5] Each of the parties was represented by counsel at the time of dissolution. The plaintiff filed the 2013 motion for modification as a self-represented party and was not represented by counsel during the proceedings at issue.

[6] "In all cases in which the court deems appropriate, the court shall . . . appoint a person, other than the person appointed to represent the minor, as guardian ad litem for such minor to speak on behalf of the best interests of the minor . . . ." (Internal quotation marks omitted.) *In re DeLeon J.*, 290 Conn. 371, 374 n.6, 963 A.2d 53 (2009).

[7] The file contains an order issued by Judge Dolan that the parties were to appear on October 9, 2013, for a *status conference*.

[8] In moving to have the case transferred to Middletown, Morrocco stated: "The basis of the motion was that this is the second time this plaintiff has filed this motion to transfer . . . to allow her to relocate out of state. The first time it was heard it was heard in Middletown . . . and the court's orders are that she would withdraw that case. And . . . there were things that [the defendant] had to do, he did those. And since then for three years, for three years, he's done everything he was supposed to do. Things have gotten better. Now she filed this motion again, second time. My understanding is that this matter should have been heard and should have been continued to be heard in Middletown in front of the Regional Family Docket."

[9] The colloquy regarding the plaintiff's objection follows.

"Attorney Morrocco: Your Honor, I'm going to object. This is the motion of the plaintiff. She has the burden of proof.

"The Court: Right. I agree.

"Attorney Morrocco: This is not . . . this is not the witness for the [guardian ad litem]. So the burden of proof is upon the plaintiff. The plaintiff has a burden to overcome according to the new statute and in accordance with existing case law in Connecticut.

"The Court: Right. But I'm going to still let her testify now because I'm not going to have her sit here all day.

"Attorney Morrocco: But it's the burden of the . . . .

"The Court: I know what the burden is."

We note that § 46b-56d provides in relevant part that "*the relocating parent* shall bear the burden of proving [the factors], by a preponderance of the evidence . . . ." (Emphasis added.)

[10] The plaintiff did not offer Leite's report as evidence. Her report, however, was placed into evidence at the request of the court.

[11] During the presentation of evidence, the court repeatedly stated that it would not hear any evidence regarding contact between the child and the defendant's son from a prior marriage, who is alleged to have had inappropriate contact with the child prior to 2009. The court, however, ordered that the child have no contact with that son.

[12] The following colloquy occurred during closing argument.

"Attorney Morrocco: I don't think she's proved . . . by a preponderance of the evidence. I don't believe that the report from . . . Leite was that strong. If the court wants her to go this is what I think should be done. She didn't say that it's overwhelming evidence that the mother should leave, it's all financial. Read the report, it says financial. She can get a better job. How do we know? How do we know she's going to get a better—it can be one month and then what do we do, we rip this all away from the child? We rip the family apart and say you can leave now. If she wants to get a job, look for a job down there, give her an opportunity and come back with something substantive. . . .

"The Court: She's got a job.

"Attorney Morrocco: I don't know. She's saying she has a job with some lady as a startup company that they're opening up by having a ribbon cutting on the twenty-second. I don't know the name, I don't know who the supervisor is. That's all her word.

"The Court: I'm not worried about any of that. *I'm worried about whether or not the place is going to be open in three months from now*.

"Attorney Morrocco: Right. And then all of a sudden we rip this family . . . apart." (Emphasis added.)

[13] The court also stated: "I'm going to do one other thing, sir, that I've never done before, and it's no reflection on the guardian ad litem, but if I'm going to look at this thing, and you don't need to give me an answer now . . . because I want him to feel that he's being treated fairly. I have no question at all that the guardian ad litem has acted appropriately in this case, but if he wants a new guardian ad litem to look at this thing when we look at it in April then I will . . . then I will appoint a new guardian ad litem. And again . . . it's no reflection on her. I have no criticism on the job that she did, and I'm not shy if people have done something that I thought was shoddy. And, I appreciate the work that you put in on this case, but it's also important to me that your client feel like he's getting a fair shake in this. Because, as I said, there are no heroes and no villains."

[14] The following colloquy occurred:

"The Court: [S]o that if he spends $1500 on airfare for her and I . . . just knocked $3500 off his child support . . . I'm not going to make her pay the difference.

"Attorney Morroco: She's just . . . starting a job, Your Honor, she can take all this time off now? It'll be Christmas in a week.

"The Court: All right. Fine, $120 . . . they split the airfare for the child. You want to do that? I'll order that.

"Attorney Morrocco: No. No, Your Honor. You're putting the burden on him to pay for her ticket.

"The Court: No, no, $70 times twenty-six weeks is how much?

"The Clerk: $1820.

"The Court: All right. And how many tickets is he going to be buying?

"Attorney Morrocco: Six.

"The Court: No he's going to be buying three roundtrip tickets. . . .

"Attorney Morrocco: For two people.

"The Court: Right. And if it's anything more than . . . $1800 she has to pay him. But I'm not going to . . . he's not going to make money on the deal. I'm not going to make her . . .

"I know. And that's all I'm saying, is these are costs because otherwise she's going to come back and tell me she can't afford to fly and then what are we going to do?

"Attorney Morrocco: You pay $25 to the airlines and they will escort the child from airline to airline.

"The Court: Really?

"Attorney Morrocco: That's why you want a direct flight. . . .

"The Court: And if you don't have a direct flight. . .  you want to send your kid . . .

"[The Defendant]: I don't want her to move.

"The Court: I understand but she's . . . .

"[The Defendant]: But this should have been thought of then if we're flying that far.

"The Court: Sir, she's going.

"[The Defendant]: I get it.

"The Court: There's nothing we can do about that now.

"[The Defendant]: I know. The family . . . isn't as important as her job.

"The Court: The question is, do you want that child to fly alone? I don't even know if they let a seven year old fly . . . .

"[The Defendant]: This must have been looked into.

"Attorney Maluszewski: Some airlines do require like a $50 accommodation fee.

"The Court: Well, that's fine.

"Attorney Maluszewski: But I think seven is a little young. . . . Why doesn't he call the airlines and find this out, come back Friday and talk to the Court.

"[The Defendant]: Because we're talking about in a month I have to come up with what, $800 to fly them both back? It's a month away. I'm not going to save that much in that time. I have other kids to raise . . . I have a mortgage to pay, I have with attorneys and everything.

"The Court: Sir, I'm not going to make you pay more than the child support amount. . . . I want you to find out where you're going to fly from, how much it's going to cost, then we'll figure out how we're going to do it."

[15] The transcript discloses the following colloquy.

"The Court: So why don't you just book the ticket now?

"[The Defendant]: Who has the money, Your Honor, right now?

"The Court: What the 348?

"[The Defendant]: Yes, I have five children. I just paid my daughter to go to college. And I didn't bring this on that's why I'm . . . that's why I tried and tried.

"The Court: Sir, I'm not going to refight the war.

"[The Defendant]: I understand that, but I'm just telling you my point of it.

"The Court: All right. Well, then if you can't buy the ticket the, the child isn't going to come.

"[The Defendant]: Okay. So you're taking her away than you're saying?

"The Court: Sir, don't do this.

"[The Defendant]: This isn't funny, Lisa.

"The Court: Nobody thinks it's funny.

"[The Defendant]: Well, she's laughing.

"The Court: She's not laughing.

"Attorney Morrocco: All right. I don't know what to do now.

"The Court: No, just he's got to find a flight. That's all. And there's no sense coming back on Friday. Find a flight and if he can get a flight a roundtrip ticket direct then we'll put the child on the flight. But if you can go on Spirit at 348, you might as well do it."

[16] The court stated: "He can borrow the money from his parents."

[17] We note that the court itself seemed to have doubts about whether the defendant received fair treatment, as it stated that the defendant may request the appointment of a new guardian ad litem at the time the court reviewed its decision in March, 2014. See footnote 13 of this opinion.

[18] The plaintiff presented evidence that she was to be paid $30,000 a year to manage a design store for a new business in an unidentified location in Texas.