******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

CHERYL ABBOTT OLSON *v.* BRIAN
MATTHEW OLSON
(AC 44033)

Elgo, Clark and Bishop, Js.

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dissolved
pursuant to a foreign judgment of dissolution, appealed to this court from
the judgment of the trial court dismissing his motion for modification
of alimony for lack of subject matter jurisdiction. The parties, who were
United States citizens, had been married in Pennsylvania. The parties
moved to the United Kingdom, where a court later dissolved the parties'
marriage, incorporating the parties' consent order into its final judgment.
The consent order provided for the distribution of the parties' property
and assets and for the payment of maintenance, including spousal and
child support. The parties thereafter moved back to the United States,
and the plaintiff filed the United Kingdom divorce decree with the trial
court in Connecticut. The plaintiff filed a motion, seeking to enforce the
parties' judgment of dissolution and to approve two qualified domestic
relations orders, which the trial court granted. Both parties subsequently
filed motions for modification of alimony, which the trial court consid-
ered but denied on the basis of a failure of supporting evidence and
procedural defects in the plaintiff's motion. Thereafter, the defendant
filed another motion for modification of alimony on the basis of the
plaintiff's cohabitation with a third party. The plaintiff filed her own
motion to modify alimony and child support, seeking an increase of both,
then filed a motion to dismiss the defendant's motion for modification
of alimony for lack of subject matter jurisdiction. The court granted the
plaintiff's motion to dismiss on the basis of its belief that the United
Kingdom had continuing, exclusive jurisdiction over the spousal support
order. Specifically, the court, relying on an order of the United Kingdom
regarding the reciprocal enforcement of maintenance orders with the
United States, concluded that neither party provided it with evidence
that the courts of the United Kingdom released or waived their exclusive
jurisdiction over its spousal support order. *Held* that the trial court
improperly dismissed the defendant's motion for modification of alimony
on the basis that it lacked subject matter jurisdiction: it was unclear
whether the provisions in the United Kingdom order relied on by the
plaintiff were even applicable to the circumstances presented in this
case, as certain conditions precedent to its application had not been
fulfilled, and, even assuming that the provisions of the order were appli-
cable, nowhere in the context of the order was it manifest that the
United Kingdom retained exclusive, rather than concurrent, jurisdiction
to modify the spousal support order at issue; moreover, the trial court
did not rely on any particular provisions of the order to support its
conclusion that it lacked jurisdiction and, instead, cited to an explanatory
note that was not part of the order and should not have been considered;
furthermore, this court found no other United Kingdom authority that
made clear that the United Kingdom retained exclusive jurisdiction, and,
therefore, the trial court had subject matter jurisdiction to consider the
defendant's motion pursuant to the applicable statute (§ 46b-321).

*(One judge dissenting)*

Argued January 12—officially released July 26, 2022

*Procedural History*

Action to register a foreign judgment of dissolution,
brought to the Superior Court in the judicial district of
Stamford-Norwalk, where the court, *Wenzel, J.*, granted
the plaintiff's motion seeking to enforce the judgment
of dissolution and approve certain qualified domestic
relations orders; thereafter, the court, *S. Richards, J.*,
denied the parties' motions for modification of alimony;

subsequently, the court, *McLaughlin, J.*, dismissed the defendant's motion for modification of alimony for lack of subject matter jurisdiction, and the defendant appealed to this court. *Reversed*; *further proceedings*.

*Alexander J. Cuda*, for the appellant (defendant).

*Thomas M. Shanley*, for the appellee (plaintiff).

*Opinion*

BISHOP, J. The defendant, Brian Matthew Olson, appeals from the judgment of the trial court granting a motion to dismiss filed by the plaintiff, Cheryl Abbott Olson, in which the court concluded that it lacked subject matter jurisdiction to modify the parties' spousal support order that had been issued by a court of the United Kingdom. On appeal, the defendant claims that the trial court erred in dismissing his motion for modification of alimony on the basis that it lacked subject matter jurisdiction, and argues that (1) the court misapplied the Uniform Interstate Family Support Act, General Statutes § 46b-301 et seq., in determining that the United Kingdom had continuing, exclusive jurisdiction over the spousal support order; (2) the United Kingdom could not have continuing, exclusive jurisdiction because it lost its exclusiveness when the trial court, *S. Richards, J.,* decided motions to modify alimony in 2013; (3) the application of the doctrine of comity demonstrates that Connecticut courts have jurisdiction to modify the foreign country order in this case; (4) the trial court erred in its reliance on this court's decision in *Hornblower* v. *Hornblower*, 151 Conn. App. 332, 94 A.3d 1218 (2014); and (5) the court erroneously relied on a United Kingdom statutory instrument, the Reciprocal Enforcement of Maintenance Orders (United States of America) Order 2007, in determining that the United Kingdom had continuing, exclusive jurisdiction to modify the support order. On the basis of our thorough review of the record and the applicable law, we agree with the defendant that the court erred in concluding that it lacked subject matter jurisdiction to modify the spousal support order at issue. Accordingly, we reverse the judgment of the trial court.

The record reveals the following facts and procedural history. The parties, who are United States citizens, were married on May 30, 1998, in Doylestown, Pennsylvania. The parties later moved to the United Kingdom and were present there in November, 2009. On December 16, 2009, a court of the United Kingdom dissolved the parties' marriage and incorporated the parties' November 19, 2009 consent order into its final judgment. The consent order was a separation agreement, which provided for the distribution of the parties' property and assets and for the payment of spousal and child support.

In or around 2010, the parties moved back to the United States. The plaintiff relocated to Connecticut and the defendant moved to New York. On April 5, 2010, the plaintiff filed the United Kingdom divorce decree with the trial court in Connecticut under principles of comity. On January 25, 2011, the plaintiff filed a motion seeking an order to enforce the parties' foreign judgment of dissolution and approve two Qualified Domestic Relations Orders (QDROs) prepared by an

attorney retained by both parties. On March 7, 2011, the court, *Wenzel*, *J.*, granted, by agreement of the parties, the plaintiff's motion for order to enforce judgment, postjudgment, and entered the two QDROs as orders of the court.

Subsequently, in May, 2011, the plaintiff sought a modification of alimony in the Superior Court for the judicial district of Stamford-Norwalk. She argued, among other things, that the parties' marital judgment provides that "[e]ither party will remain at liberty during the continuation of the periodical payments to apply for an upward or downward variation, or termination or capitalism of such maintenance." (Internal quotation marks omitted.) Accordingly, she argued that a "substantial change of circumstances has arisen since the entry of the orders of the [United Kingdom] court on December 16, 2009, in that the defendant's income from employment, salary, and bonus structure have significantly changed such that the plaintiff's receipt of alimony is greatly reduced based upon the present formula."

On July 5, 2012, the defendant similarly sought a modification of the spousal support order in the same court as the plaintiff's filing, alleging that the plaintiff began living with another person, resulting in a change in the circumstances contemplated in General Statutes § 46b-86 (b).

The trial court, *S. Richards*, *J.*, considered the motions for modification but ultimately denied them in a memorandum of decision dated October 4, 2013. The court did not deny the motions for modification on the basis of a want of jurisdiction; rather, the motions were denied because of a failure of supporting evidence and procedural defects in the plaintiff's motion.[1] The court stated that the "the plaintiff requests a modification of the court-ordered alimony under paragraph 2 (d) of the parties' separation agreement based on a substantial change in circumstances. Upon reviewing the plaintiff's pleading, the court denies the plaintiff's motion for modification on the grounds that the plaintiff failed to state the specific factual and legal basis for the claimed modification in accordance with Practice Book § 25-26 (e), failed to provide the court with the applicable substantive law of the controlling jurisdiction and failed to provide the court with currency conversion calculations." The court similarly denied the defendant's motion for modification, concluding that the "defendant did not provide the court with any evidence of the applicable substantive law of the controlling jurisdiction that would permit the modification of alimony on the basis of a showing of cohabitation or a substantial change in circumstances pursuant to Connecticut law." However, the court exercised jurisdiction over the marital judgment by ordering the defendant to make specific payments in accordance with it, to wit, payments of

$8552 and $184,479, which represented the plaintiff's share of certain stock owed to her.

On August 19, 2019, the defendant filed a new motion for modification of alimony asking the court to modify alimony due to the plaintiff's cohabitation. On September 11, 2019, the plaintiff also filed her own motion to modify alimony and child support seeking an increase of both. In October, 2019, the parties worked with the caseflow office of the Superior Court for the judicial district of Stamford-Norwalk to schedule the motions to be heard on January 28, 2020.

On January 23, 2020, five days before the scheduled hearing, the plaintiff filed a motion to dismiss the defendant's motion to modify alimony, arguing for the first time that the court lacked subject matter jurisdiction to modify the judgment. On January 27, 2020, the defendant filed an objection to the plaintiff's motion through which he argued, inter alia, that the court had jurisdiction to consider the motion and that "the plaintiff's position sets up a double standard that cannot possibly be sustained: that when the plaintiff sought modification of the existing alimony order in 2011, this court had jurisdiction to consider such motion but now that the defendant seeks the same relief, the court lacks jurisdiction to act." (Emphasis omitted.) He argued that the "plaintiff's sole purpose in filing the motion to dismiss is to delay the impending hearing on the defendant's motion to modify. . . . If the plaintiff genuinely had a question as to this court's subject matter jurisdiction, that objection would have, and should have, been raised in 2010 when the plaintiff asked this court to domesticate the judgment, in 2011 when the plaintiff filed her first motion to modify alimony, or prior to the plaintiff filing her pending motion seeking a modification of alimony and child support, rather than five days before the scheduled hearing." (Emphasis omitted.) The defendant also noted that the plaintiff filed a motion to dismiss solely with respect to the defendant's motion for modification despite her also having filed a motion for modification.

In a memorandum of decision dated February 21, 2020, the trial court, *McLaughlin, J.*, concluded that the court did not have subject matter jurisdiction to modify the parties' foreign country spousal support order on the basis of its belief that the United Kingdom had continuing, exclusive jurisdiction over it. In particular, the court stated that, "under the United Kingdom's Reciprocal Enforcement of Maintenance Orders (United States of America) Order 2007 ([REMO]), the courts of the United Kingdom keep exclusive jurisdiction over all maintenance orders." In support of this conclusion, the court quoted the explanatory note to the REMO, which states in relevant part: "The principal modification effected by [the REMO] is that a maintenance order made in the United States of America may

not be varied or revoked in the United Kingdom and that a maintenance order made in the United Kingdom may not be varied or revoked in the United States of America (see sections 5 and 9 in Schedule 2)." The court, however, recognized that the explanatory note is not a part of the REMO itself. The court then stated: "Neither party provided the court with evidence that the courts of the United Kingdom have released or waived their exclusive jurisdiction to modify the maintenance orders in the consent order. While the court recognizes that all parties currently reside in the United States of America, including the minor children, which may make modification of support orders more complicated, based on the clear language of [General Statutes] § 46b-321 (b), this court lacks subject matter jurisdiction to modify the United Kingdom's spousal support orders." The defendant timely appealed.

This case requires us to interpret the Uniform Interstate Family Support Act (UIFSA) to determine whether Connecticut courts lack subject matter jurisdiction to modify spousal support orders issued by a court of the United Kingdom. See General Statutes § 46b-301 et seq. The plaintiff argues that the court properly interpreted UIFSA in reaching its conclusion that the court lacked subject jurisdiction. The defendant argues that the court's determination was erroneous. We agree with the defendant.

We begin with the standard of review governing a trial court's disposition of a motion to dismiss that challenges jurisdiction. "A determination regarding a trial court's subject matter jurisdiction is a question of law." (Internal quotation marks omitted.) *Rocky Hill* v. *SecureCare Realty, LLC*, 315 Conn. 265, 276, 105 A.3d 857 (2015). "[O]ur review of the court's ultimate legal conclusion[s] and resulting [determination] of the motion to dismiss will be de novo." (Internal quotation marks omitted.) *Feehan* v. *Marcone*, 331 Conn. 436, 446, 204 A.3d 666, cert. denied, U.S. , 140 S. Ct. 144, 205 L. Ed. 2d 35 (2019). "In undertaking this review, we are mindful of the well established notion that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Markley* v. *State Elections Enforcement Commission*, 339 Conn. 96, 106, 259 A.3d 1064 (2021). "[T]he Superior Court of this state as a court of law is a court of general jurisdiction. It has jurisdiction of all matters expressly committed to it and of all others cognizable by any law court of which the exclusive jurisdiction is not given to some other court. The fact that no other court has exclusive jurisdiction in any matter is sufficient to give the Superior Court jurisdiction over that matter." (Internal quotation marks omitted.) *In re Joshua S.*, 260 Conn. 182, 215, 796 A.2d 1141 (2002). "[T]he general rule of jurisdiction . . . is that nothing shall be intended to be out of the jurisdiction of a Superior Court but that which

specially appears to be so; and . . . nothing shall be intended to be within the jurisdiction of an inferior court but that which is expressly so alleged. . . . [N]o court is to be ousted of its jurisdiction by implication." (Internal quotation marks omitted.) *Raftopol* v. *Ramey*, 299 Conn. 681, 695, 12 A.3d 783 (2011).

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning . . . [we] first . . . consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Kinsey* v. *Pacific Employer Ins. Co.*, 277 Conn. 398, 405, 891 A.2d 959 (2006).

As background, UIFSA is one of numerous uniform acts drafted by the National Conference of Commissioners on Uniform State Laws in the United States. "UIFSA, which has been adopted by all states,[2] including Connecticut, governs the procedures for establishing, enforcing and modifying child and spousal support, or alimony, orders, as well as for determining parentage when more than one state is involved in such proceedings." (Footnote added; footnote omitted.) *Hornblower* v. *Hornblower*, supra, 151 Conn. App. 333; see also General Statutes § 46b-301 et seq.; *Studer* v. *Studer*, 320 Conn. 483, 487, 131 A.3d 240 (2016).

In this appeal, we are asked to determine whether § 46b-321 (b) divested the court of subject matter jurisdiction to modify the United Kingdom spousal support order that is at the heart of this dispute. Section 46b-321 (b) provides: "A tribunal of this state may not modify a spousal support order issued by a tribunal of another state or a foreign country having continuing, exclusive jurisdiction over that order under the law of that state or foreign country."[3] From this text, it is clear that, although Connecticut courts do not have subject matter jurisdiction over a spousal support order issued by a court of another state or a foreign country having *continuing, exclusive jurisdiction* over that order, a Connecticut court *does* have subject matter jurisdiction to modify a spousal support order issued in another state

or a foreign country if that state or foreign country does not, by the terms of its laws, maintain continuing, *exclusive* jurisdiction over the spousal support order at issue. Accordingly, we must determine whether the United Kingdom, under its laws, has continuing, *exclusive* jurisdiction to modify the spousal support order in question.[4]

Both before the trial court and this court, the plaintiff argued that the REMO[5] makes clear that the United Kingdom retains continuing, exclusive jurisdiction to modify the spousal support order at issue and that the trial court correctly so held. The defendant argues that the United Kingdom does not have continuing, exclusive jurisdiction to modify the spousal support order, and argues that the REMO does not preclude a Connecticut court from modifying the United Kingdom support order at issue.

The trial court, in determining that the United Kingdom maintained exclusive jurisdiction over the present spousal support order, stated: "[U]nder the United Kingdom's Reciprocal Enforcement of Maintenance Orders (United States of America) Order 2007 . . . the courts of the United Kingdom keep exclusive jurisdiction over all maintenance orders. There is no distinction in the [REMO] of spousal support [versus] child support. The term 'maintenance orders' appears to apply to both. Moreover, the court found the explanatory notes of this order instructive. The explanatory notes state in pertinent part '[t]he principal modification effected by [the REMO] is that a maintenance order made in the United States of America may not be varied or revoked in the United Kingdom and that a maintenance order made in the United Kingdom may not be varied or revoked in the United States of America (see sections 5 and 9 in Schedule 2).' " (Emphasis in original; footnote omitted.)

Our review of the REMO mandates a different conclusion. First, there is a serious question as to whether the provision in the REMO relied on by the plaintiff for her contention that the United Kingdom retains exclusive jurisdiction to modify the order is even applicable to the circumstances presented. Section 5 of Schedule 2 of the REMO, titled "Variation and revocation of maintenance order made in United Kingdom," begins: "(1) This section applies to *a maintenance order certified copies of which have been sent in pursuance of section 2 to the United States of America for enforcement*." (Emphasis added.) Reciprocal Enforcement of Maintenance Orders (United States of America) Order, 2007, S.I. 2007/2005, schedule 2, § 5 (U.K.). Section 2 of Schedule 2 details the process by which a party may obtain and send certified copies to the United States.[6] It thus appears that fulfillment of the requirements under section 2 is a condition precedent to section 5's application. None of those conditions was fulfilled in this case

because, as noted, the United Kingdom judgment was simply registered in Connecticut pursuant to common-law notions of comity.

Second, even if we were to assume that the provisions in the REMO relied on by the plaintiff are applicable to the circumstances presented here, nowhere in the context of the REMO is it manifest that the United Kingdom retains *exclusive* jurisdiction to modify the spousal support order at issue. Section 5 of Schedule 2 of the REMO further provides: "(2) The jurisdiction of a court in the United Kingdom to revoke, revive or vary a maintenance order shall be exercisable notwithstanding that the proceedings for the revocation, revival or variation, as the case may be, of the order are brought by or against a person residing in the United States of America." Section 5 then sets forth certain conditions related to notice that a court of the United Kingdom must undergo before it makes any variation or revocation to an order originally made in the United Kingdom.

Although it appears from these provisions that the United Kingdom maintains continuing jurisdiction to modify a spousal support order initiated in the United Kingdom, as noted, we have not found any language in the REMO that demonstrates that the United Kingdom keeps *exclusive*, rather than *concurrent*, jurisdiction to modify the spousal support order in this case. To import language into the REMO that is not present would, in our view, not only be legally incorrect, but it would work an unreasonable burden on the parties in this case—two citizens of the United States who have returned home to the United States with no indication that they intend to return to the United Kingdom. While the states of the United States have made explicit in their laws that their jurisdiction over such orders is "exclusive,"[7] the United Kingdom's REMO is conspicuously devoid of similar limiting language.

We note, in particular, that in rendering its decision, the trial court did not cite to any particular provisions of the REMO to support its conclusion that it lacked jurisdiction. Rather, it cited to an "Explanatory Note" published at the end of the order, which states in no uncertain terms: "This note is not part of the Order." See *Rubie's Costume Co.* v. *United States*, 337 F.3d 1350, 1359 (Fed. Cir. 2003) (explanatory notes not legally binding in international tariff dispute). Connecticut courts "cannot, by judicial construction, read into legislation provisions that clearly are not contained therein." (Internal quotation marks omitted.) *Regan* v. *Regan*, 143 Conn. App. 113, 121, 68 A.3d 172, cert. granted, 310 Conn. 923, 77 A.3d 140 (2013) (appeal dismissed October 15, 2014). Because the order was clear and unambiguous as written, it was inappropriate for the court to go beyond the text of the law. See *Apple, Inc.* v. *United States*, 964 F.3d 1087, 1095–96 (Fed. Cir. 2020) (explanatory notes "cannot be used to . . . cre-

ate ambiguity").[8]

In addition to our review of the REMO, we similarly have found no other United Kingdom authority that makes clear to this court that the United Kingdom retains exclusive jurisdiction over the spousal support order at issue. We note that the plaintiff provided very little to both this court and the trial court about the foreign law and how it demonstrates the United Kingdom's exclusivity to modify the order. Other than providing a brief history of UIFSA and a copy of the REMO, it provided little or no context, cases, or analysis of how the REMO, a 2007 United Kingdom order, is interpreted by United Kingdom courts; how it was affected, if at all, by the ratification of the Hague Convention on the International Recovery of Child Support and Other Forms of Family Maintenance by the European Union in 2014; or if there was any impact on the REMO in light of the United Kingdom's withdrawal (or rather the then anticipated withdrawal) from membership in the European Union.

At bottom, "[i]t is not the court's duty, unaided by the [plaintiff], to scour the annals of the law of the . . . United Kingdom in an effort to locate or to fashion a hook upon which [her motion] can be hung." *Heath* v. *American Sail Training Assn.*, 644 F. Supp. 1459, 1471 (D.R.I. 1986). In light of the foregoing, and in light of the well-known maxim that "every presumption favoring jurisdiction should be indulged"; (internal quotation marks omitted) *Financial Consulting, LLC* v. *Commissioner of Ins.*, 315 Conn. 196, 226, 105 A.3d 210 (2014); we conclude that the trial court did not lack subject matter jurisdiction to entertain the defendant's motion to modify alimony.[9]

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion CLARK, J., concurred.

[1] During oral argument before this court and in her appellate brief, the plaintiff asserted that the court in 2013 had denied the parties' respective motions for modification on the basis that the court lacked jurisdiction. This is not an accurate portrayal of the court's memorandum of decision.

[2] In 1996, Congress mandated the enactment of UIFSA as a precondition to states' eligibility for obtaining federal grant money to fund child and spousal support programs. See Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193, § 321, 110 Stat. 2105, 2221, codified as amended at 42 U.S.C. § 666 (f). Congress later passed the Preventing Sex Trafficking and Strengthening Families Act, Pub. L. No. 113-183, § 301 (f), 128 Stat. 1919, 1944–95 (2014), requiring states to adopt amendments to UIFSA, again as a precondition to certain federal funding. Connecticut adopted these amendments pursuant to No. 15-71 of the 2015 Public Acts, titled "An Act Adopting the Uniform Interstate Family Support Act of 2008."

[3] We note that the jurisdictional rules under UIFSA differ for child support orders. See General Statutes § 46b-393; see also General Statutes §§ 46b-315 and 46b-388.

[4] Although not material to the question before us, it appears that all the states of the United States, by adopting UIFSA, maintain continuing, exclusive jurisdiction to modify spousal support orders originally issued in each respective state. See Thomson Reuters, Alimony, Maintenance, and other Spousal Support, 50 STATE STATUTORY SURVEYS: Family Law: Divorce and Dissolution (May 2021); see also General Statutes § 46b-321 (a) ("[a]

tribunal of this state issuing a spousal support order consistent with the law of this state has continuing, exclusive jurisdiction to modify the spousal support order throughout the existence of the support obligation").

[5] REMO is a United Kingdom order, which, among other things, designates the United States of America as a reciprocating country with the United Kingdom for the purposes of the Maintenance Orders (Reciprocal Enforcement) Act, 1972, c. 18 (U.K.).

[6] Section 2 of Schedule 2 provides: "(1) Subject to subsection (2) below, where the payer under a maintenance order made, whether before, on or after 1st October 2007, by a court in the United Kingdom is residing or has assets in the United States of America, the payee under the order may apply for the order to be sent to the United States of America for enforcement.

"(2) Subsection (1) above shall not have effect in relation to an order made by virtue of a provision of Part II of this Act.

"(3) Every application under this section shall be made in the prescribed manner to the prescribed officer of the court which made the maintenance order to which the application relates.

"(4) If, on an application duly made under this section to the prescribed officer of a court in the United Kingdom, that officer is satisfied that the payer under the maintenance order to which the application relates is residing or has assets in the United States of America, the following documents, that is to say—

"(a) three certified copies of the maintenance order;

"(b) a certificate signed by that officer certifying that the order is enforceable in the United Kingdom;

"(c) a certificate of arrears so signed or, in Scotland, signed by the applicant or his solicitor;

"(d) a sworn statement signed by the payee giving the following information—

"(i) the address of the payee;

"(ii) such information as is known as to the whereabouts of the payer; and

"(iii) a description, so far as is known, of the nature and location of any assets of the payer available for execution;

"(e) a statement giving such information as the officer possesses for facilitating the identification of the payer; and

"(f) where available, a photograph of the payer;

shall be sent by that officer, in the case of a court in England and Wales or Northern Ireland, to the Lord Chancellor, or, in the case of a court in Scotland, to the Scottish Ministers, with a view to their being transmitted by him to the responsible authority in the United States of America if he is (or they are) satisfied that the statement relating to the whereabouts of the payer and the nature and location of his assets gives sufficient information to justify that being done.

"(5) Nothing in this section shall be taken as affecting any jurisdiction of a court in the United Kingdom with respect to a maintenance order to which this section applies, and, subject to section 5 below, any such order may be enforced, varied or revoked accordingly." Reciprocal Enforcement of Maintenance Orders (United States of America) Order, 2007, S.I. 2007/2005, schedule 2, § 2 (U.K.).

[7] See, e.g., General Statutes § 46b-321 (a) ("[a] tribunal of this state issuing a spousal support order consistent with the law of this state has continuing, *exclusive* jurisdiction to modify the spousal support order throughout the existence of the support obligation" (emphasis added)); Mass. Gen. Laws c. 209D, § 2-211 (a) (Cum. Supp. 2021) ("[a] tribunal of the commonwealth issuing a spousal support order consistent with the law of the commonwealth has continuing, *exclusive* jurisdiction to modify the spousal support order throughout the existence of the support obligation" (emphasis added)); N.Y. Jud. Ct. Acts § 580-211 (a) (McKinney Cum. Supp. 2021) ("[a] tribunal of this state issuing a spousal-support order consistent with the law of this state has continuing, *exclusive* jurisdiction to modify the spousal-support order throughout the existence of the support obligation" (emphasis added)).

[8] Although the dissent has found some United Kingdom case law to suggest that some United Kingdom courts in some contexts have used explanatory notes as aids to statutory construction in the United Kingdom, it is far from clear that this practice is commonplace there, and, even if so, whether judges in the United States should yield their well trodden methods of statutory construction to the preferences of a foreign legislative body and judiciary.

[9] The defendant makes various other arguments in support of his claim that the court erred in determining that it lacked subject matter jurisdiction.

Among these arguments is his contention that the plaintiff should be precluded, under the rationale employed in *Sousa* v. *Sousa*, 322 Conn. 757, 143 A.3d 578 (2016), from challenging subject matter at this late juncture because it amounts to an impermissible collateral attack. See id., 771–72 ("[A]lthough challenges to subject matter jurisdiction may be raised at any time, it is well settled that [f]inal judgments are . . . presumptively valid . . . and collateral attacks on their validity are disfavored. . . . A collateral attack on a judgment is a procedurally impermissible substitute for an appeal. . . . [A]t least where the lack of jurisdiction is not entirely obvious, the critical considerations are whether the complaining party had the opportunity to litigate the question of jurisdiction in the original action, and, if [she] did have such an opportunity, whether there are strong policy reasons for giving [her] a second opportunity to do so." (Citations omitted; emphasis omitted; internal quotation marks omitted.)). The defendant argues that raising subject matter jurisdiction at this late stage, especially when the plaintiff herself previously has filed multiple motions for modification, results in an impermissible attack of Judge Richards' 2013 judgment deciding the parties' motions to modify alimony.

In light of our resolution of this case, we need not reach this very interesting question (or the other arguments proffered by the defendant), and we leave for another day the question of whether finality considerations should preclude a plaintiff, like the plaintiff in this case, from challenging a court's subject matter jurisdiction to modify an alimony order when the trial court previously exercised jurisdiction over the plaintiff's own motion to modify that same alimony order, even in a case, such as this, in which the court did not modify the original order.

———————————————————